[Civ. No. 19775. Second Dist., Div. Three. Feb. 26, 1954.]

Estate of HARRY G. BUCHMAN, Deceased. CLAIRE MORSE, Respondent, v. HAMLIN K. BUCHMAN, as Executor, etc., Appellant.

Morris Lavine for Appellant.

Jerry Giesler and George I. Devor for Respondent.

VALLÉE, J.—Appeal from an order of the probate court revoking letters testamentary and removing an executor.

Harry G. Buchman died testate on September 4, 1951. He named appellant Hamlin K. Buchman, his brother, executor of his will. The will left three-fourths of the estate to appellant, and one-fourth to Claire Buchman, his wife, from whom he was separated. The will was admitted to probate and an order made that letters testamentary issue to appellant on his giving a surety bond of $75,000, or a personal bond of $150,000. Letters testamentary issued to appellant on October 18, 1951. The inventory was filed May 12, 1952.

On January 26, 1953, Claire Morse, formerly Claire Buchman, filed a petition praying that a citation issue commanding appellant to show cause why, among other things, the letters testamentary issued to him should not be revoked and he should not be removed as executor. The petition averred, as one ground for appellant's removal, that he had not returned an inventory within three months after the date of his appointment. It did not allege that appellant was so mentally deranged as to be incompetent to act as executor.

On January 26, 1953, a citation issued commanding appellant to appear on February 13, 1953, and show cause why the letters testamentary should not be revoked and he should not be removed as executor. The citation was served on appellant's attorneys, but not on him personally as required by section 1207 of the Probate Code. However, he filed an answer to the petition and citation in which he averred that Claire Morse is not a person interested in the estate because of a property settlement agreement she had entered into with decedent and facts showing reasonable cause why the inventory had not been filed within three months after his appointment, one fact being that the appraisal was not completed by the appraiser until May 12, 1952, on which date it was filed.

The matter came on for hearing on March 11, 1953. Appellant was present, represented by counsel. A conference

was immediately had in the judge's chambers between the judge and counsel for the petitioner and for appellant. The conference was not reported. As will appear hereafter, the attorney for appellant evidently told the judge that appellant had been having some treatments for a nervous disorder. When the judge returned to the bench, considerable discussion took place between the court and counsel with respect to other matters in the estate that were on the calendar that day. As the noon recess was about to be taken, the judge stated he had received some information under section 521 of the Probate Code which he could not ignore; that he felt it was his duty to investigate; and that on resuming the hearing in the afternoon, he would "go into some of these matters concerning the present status of the executor and any treatment that he is undergoing and so on."

On resumption of the hearing in the afternoon, appellant addressed the court stating he was not represented by counsel. Counsel for the petitioner stated the record showed that a firm of attorneys represented appellant. Appellant declared that in view of what had transpired that morning, he had asked his attorney, who attended the conference in the judge's chambers, how the court had found out that he (appellant) had been to a physician; and the attorney had said he had given that information to the judge. He stated that during the noon recess he had attempted to contact other attorneys, among them, Mr. Dee Holder. The judge interrupted, and said: "[D]o you think perhaps because of—in order to expedite the matter, would you like to resign and then your rights could be completely protected and we could go about it in that way? We could consider your suggestions as to a suitable corporate in any matter of this kind and anything of this kind could be avoided without any suggestion one way or the other, except that you feel a little nervous now." The following then occurred: "MR. BUCHMAN [appellant, the executor] : "Your Honor, I feel a little bit nervous because I am taken by surprise. I feel a little bit nervous too because I appear in court not feeling that I am represented by counsel, which is the constitutional right of every citizen. THE COURT: You don't feel that you want to resign at this time? MR. BUCKMAN: No, your Honor. My brother, Harry G. Buchman, a man that I financed many years ago, had every confidence that I was capable of acting as executor and he so appointed me, not only in one will but in three or four wills.

... THE COURT: I would suggest that the simplest way would be for you as executor to resign. Certainly you would be heard and I think you perhaps could be more effective in that position. MR. BUCHMAN: No, your Honor, I will not resign. I will not resign. I won't resign in the face of that accusation, which I think he has taken advantage of, any more than I would—— THE COURT: What accusation? MR. BUCHMAN: Any more than—— THE COURT: Just a moment. Which accusation is that you are talking about? MR. BUCHMAN: What about the information related to the court without my knowledge? THE COURT: There is no information related to the court except what is in the pleadings here. ... MR. BUCHMAN: ... Now, I won't resign on any facts of this nature at this time any more than I would resign on any embarrassment on the facts in 1941. THE COURT: Of course, I am suggesting that if you did want to resign, and there might be many reasons why you would want to resign, it would be without any implication whatsoever. MR. BUCHMAN: No, your Honor, I feel I should have a chance to have counsel represent me. ...

"THE COURT: Well, I tell you there is a way out. You have an Achilles heel in that you didn't file an inventory within 90 days. That is within the discretion of the court to consider that the failure of this obligation or duty would be a cause for removing you. I have had a chance to observe you here. I have had a chance to observe you here this morning in the corner. Oh, you may have a reason for it—— MR. BUCHMAN: Well, I don't want my photograph taken, your Honor. I don't want my photograph taken. But I will submit to any test, your Honor, that is requested in a matter of this kind, skillful and competent examination, and I will submit myself to examination before distinguished people, distinguished physicians, your Honor."

Appellant then addressed the court at great length, following which the judge asked him whether he had consulted a neurologist recently, to which he replied that he would have no hesitancy about going into the judge's chambers. The judge then asked him if he would answer questions on the record if he went into chambers, to which he replied that he would. The judge and appellant then retired to the judge's chambers without the presence of counsel. A reporter was present. Appellant was not sworn. The judge asked him whether he had had a recent consultation with a neurologist. He said he had. The judge asked him who was his neurologist.

Without answering the question, appellant made a long statement to the judge, some of it relating to the estate, most of it not. The judge again asked him if he did not want to resign. He said ''no,'' that in the first place he wanted to be represented by counsel and he would be examined by any physician appointed by the court. The judge then said: ''Of course, it is not entirely a matter of medical testimony. I have the responsibility, if I think a person is emotionally incompetent to handle the matter I really have to get an executive that can.'' Appellant replied: ''Emotionally—I am not emotional in the operation of my property.''

The judge resumed the bench and Mr. Holder appeared. The judge told Mr. Holder, among other things, that the attorney for appellant had told him in chambers that morning that appellant ''had been having some treatments for a nervous disorder''; that in open court he had asked appellant about ''the neurological treatment,'' and he had said he preferred to talk in chambers; that in chambers appellant had ''conceded'' there had been treatments; that he suggested other reasons for it, did not care to give the name of the doctor, but would submit to any doctor the court might appoint; and ''There is another technical cause set forth in the petition for removal with which you are acquainted, that is the failure to file inventory within 90 days, which has been a means by which the court if it wants to, can have a technical reason for removal, *that is rather difficult and almost impossible to meet*. [Italics added] . . . I have contacted Dr. Edwin E. McNeil, M.D., who is a neurologist and a psychiatrist, and I have arranged an appointmnt at 2 o'clock tomorrow for Mr. Buchman to go there and consult with the doctor, and the doctor will render his written report to me.'' Appellant stated he would prefer not to have it in the hands of just one person. The judge asked Mr. Holder to advise appellant to wait until Dr. McNeil's report was in. Mr. Holder stated that appellant could have examinations by other doctors which the judge would be willing to consider. The judge, in part, replied: ''Oh, yes, if I am willing to prolong the hearing. I don't know. I [*sic*] would be within the court's control, but I certainly want to be fair.'' Mr. Holder then said he wanted to get his status clear; he understood appellant was then represented by counsel. The judge replied: ''As executor or administrator. I think this goes to personal privilege. I think when you are being removed

for causes . . . that it would be perfectly permissible for him to have special counsel on that matter alone.'' The judge gave appellant Dr. McNeil's address and telephone number, and told him he was to be there the next day, Thursday, March 12, at 2 p. m. Mr. Holder stated: ''I understand the only matter your Honor will be considering is the mental responsibility of Mr. Buchman to continue to act as executor under the will; is that correct?'' To which the judge replied, ''Yes.''

The hearing was resumed on March 13, 1953, at which time Mr. Morris Lavine appeared and stated that appellant had retained him the day before and that he had presented a substitution of attorneys to the attorney of record for appellant who was present. The judge stated he could not consent to a substitution ''when a conflicting estate matter, another matter is on trial''; that there had to be a motion, and that Mr. Lavine might ''appear for him specially on this matter of personal privilege.''

The judge then ascertained from the clerk that Dr. McNeil had not made an examination, and the following took place: ''THE COURT: Well, I was well satisfied that he was incompetent here. I have a record here, his rambling statements, his staring eyes, the emotional approach, and I was sorry, but in the performance of my duty I have to be sure that there are no executors or administrators who are not competent to carry out the office, but he asked to have an examination and I suggested that he have one. MR. LAVINE: He has had one. THE COURT: But if he is not capable of permitting the examination or cooperating in one it verifies my opinion that I had already formed. There was also a technical reason why I have a right to remove him, and I am now removing him as executor on those grounds: First, that he is incompetent; and, second, that he did not file his inventory within 90 days. The order is now made.

''MR. HOLDER: Now, if your Honor please, may I make the observation first—— THE COURT: But he is removed. Now, you can go on from there. I expect there will be an appeal. MR. LAVINE: Yes, your Honor, there will be an appeal. THE COURT: Well, I will appoint a special administrator to proceed, but it is my duty, I cannot do anything else, and that is why I am acting as I am. I do not have to go any further than that. MR. LAVINE: Well, your Honor, we have a doctor here this morning. He saw him yesterday. And we are also ready to make an offer of proof. THE COURT: You

can make your offer of proof if you want. I was ready to make my decision and it was because of consideration for him that I let him go to that doctor. He did not cooperate with that doctor. MR. LAVINE: That is not true. THE COURT: It verified my opinion that he is probably not emotionally stable enough to handle it as executor. MR. LAVINE: How does it show, your Honor, he did not cooperate with that doctor? May I ask that question? THE COURT: You heard the oral report. MR. LAVINE: No, there has been no report. The doctor is not present and the facts of the matter are, your Honor, we are prepared to show that Mr. Buchman went to the office of Dr. McNeil and said, 'I will be glad to cooperate with you for an examination. I want a witness present. I want a stenographer present.' THE COURT: You know very well that psychiatric examination cannot be made with a third party present. MR. LAVINE: Another doctor made it and he is present. THE COURT: I know, you can get dozens of doctors, you can get testimony on either side. It is not disrespect to the doctors, but it is not the examination and the ultimate decision has to be made by the court. But I must confess I was already [to] decide the matter the other day, but I extended to him the courtesy of allowing him an interview with a doctor who has no interest in any way and who knows none of the parties and in whom the court has confidence, particularly because of two or three other matters he testified in. But I am not going to continue this. There is no necessity to continue it. The record is made and I will stand or fall by it, but I will not proceed without—— MR. LAVINE: May I address the court and make my offer of proof? I still think that I have the right to make the offer of proof and make my record. THE COURT: Yes, you may make your offer.'' Mr. Lavine made the offer of proof set forth in the margin.[1] The judge agreed that the offer of proof be deemed to have been made before the ruling; he rejected the offer of proof and rejected an offer by Mr. Lavine to have appellant go to an independent psychiatrist providing the phychiatrist did not talk with either side and was willing to have a reporter present and the hearing taken down or have a recording device present to record the examination. The judge again stated that the executor was removed. Findings of fact and conclusions of law were thereafter made. The findings were in part predicated on the unreported con-

[1] See footnote 1 at end of Opinion.

554

ference between the judge and counsel in chambers. The conclusions of law were that the executor was so mentally deranged as to be incompetent to act as executor and (written in longhand by the judge) "That said Buchman did not file his inventory in the time prescribed by law." An order was thereupon entered removing appellant as executor and revoking the letters testamentary issued to him.

Appellant contends: he was denied due process of law; the trial judge prejudged his mental competence; he was removed without any evidence; the order of removal was arbitrary and capricious; the court erred in rejecting the offer of proof.

■ It is the universal rule that a testator may name the person who shall be the executor of his will, and such person has a right to act in the absence of a specific statutory disqualification. (*Estate of Wellings*, 192 Cal. 506, 510 [221 P. 628]; anno.: 95 A.L.R. 828; 54 Am.Dec. 518.) It has been held that, in the absence of some statute, the power to name an executor to administer an estate is coextensive with the power to bequeath or devise the estate itself. (*In re Guye's Estate*, 54 Wash. 264 [103 P. 25, 26, 132 Am.St.Rep. 1111].)

The same considerations apply to the removal of an executor. ■ A testator's selection of an executor should not be annulled except on a clear showing that the best interests of the estate require it. (*Estate of Sherman*, 5 Cal.2d 730, 744 [56 P.2d 230].)

Appellant did not have an "Achilles' heel" because of the delay in filing the inventory until it was established that the delay was willful or that he was negligent and the delay had caused detriment to the estate. ■ The general rule is that an executor or administrator will not be removed for the mere delay or failure to file an inventory within the time prescribed by the statute, unless the delay or failure has caused a loss to the estate. (*In re Chadbourne*, 15 Cal.App. 363 [114 P. 1012]; *Willoughby* v. *Willoughby*, 203 Ala. 138 [82 So. 168, 169]; *In re Fehlmann's Estate*, 134 Ore. 33 [292 P. 1029, 1033, 72 A.L.R. 949]; 33 C.J.S. 1035, § 90c; 21 Am.Jur. 459, § 153.)

■ The burden of proving that the delay in filing the inventory was willful or negligent was on the petitioner, and appellant had the right to rely on the presumption of fair conduct and faithful performance of official duty until something was offered to overcome it. Anyone with any knowledge of the probate of estates knows that in many cases the filing of the inventory is unavoidably delayed without the fault of the representative. ■ To refuse to permit an executor to intro-

duce evidence in his own behalf which tends to show reason for the delay, as was done in the present case, is to deny him the opportunity to be heard. (11A Cal.Jur. 423, § 303.)

*In re Graber,* 111 Cal. 432 [44 P. 165], was an appeal from an order denying a petition to revoke letters testamentary for failure to file an inventory within the time prescribed by the statute. It was contended the statute was mandatory. The court held it was directory, saying (p. 435) : ''The statute says the court may, *upon notice,* revoke the letters testamentary or of administration. The fact that such revocation can only take place after notice, is a clear indication that the executor or administrator is to be given an opportunity to come before the court and show cause why his letters should not be revoked.''

*In re Chadbourne,* 15 Cal.App. 363 [114 P. 1012], was an appeal from an order removing an executor for failure to publish notice to creditors within the statutory period. Reversing the order, the court made these pertinent observations (pp. 367, 371-373) : '' [I]t should be and is the policy of the law to give effect, as far as it can be legally done, to the expressed will of the deceased. The nomination of the executor is evidence of the confidence reposed in him by the testator, and the deliberate purpose and desire thus solemnly expressed as to the administration should not be thwarted unless the plain provisions of the law or the interests of justice demand it. . . . It has been declared that 'the principle governing the disposition of applications such as this is expressed in the phrase ''whom the testator will trust so will the law.'' . . . The reason for taking away the authority of a person so chosen should be well grounded upon undoubted proof of his utter improvidence and unfitness for the duties of his trust.' . . . In *Haines* v. *Carpenter,* 1 Wood, 262, [Fed.Cas. No. 5905], it is said: 'A strong case must be made out to induce the court to take possession of the property from an executor who has qualified and given bond for the faithful discharge of his trust and has taken possession under the will.' . . . It may be said also that he is commanded to file his inventory within a certain time. . . . Yet if he fails to do so and has a sufficient excuse, the court will overlook his default. (*In re Graber,* 111 Cal. 434, [44 Pac. 165].) . . . So in *Hubbard* v. *Smith,* 45 Ala. 516, where the administrator had failed to return an inventory in the time required by law, the court said: 'He ought to have filed an inventory, as any other administrator

is required to do, and to have made annual settlements, but the mere omission to do so when he was not negligent and there has been no detriment to the estate is not ground for removal.' Indeed, the cases are numerous where there has been a technical violation of the law and yet where the delinquent has been relieved of the penalty on account of inadvertence, surprise or excusable neglect. . . . There is also the other consideration of some moment that the forfeiture of an office is involved, and the rule is that such provisions must be strictly construed and forfeiture is not favored.''

 No man is infallible; the wisest makes mistakes; but the law holds no executor responsible for the consequences of his mistakes which are the result of the imperfection of human judgment and do not proceed from fraud, gross carelessness, or indifference to duty. There was no showing that appellant did not act in the utmost good faith and with a sincere purpose to discharge as promptly as possible his legal duty; nor was it made to appear that by reason of delay in the filing of the inventory any detriment was caused to the estate.

*Estate of Richardson*, 74 Cal.App.2d 350 [168 P.2d 774], relied on by respondent, is not in point. In that case the executor did not file the inventory until twenty months after his appointment. It appears from the record that a citation was issued; a hearing was had; witnesses were sworn, examined, and cross-examined. The executor was given an opportunity to explain the delay and to show reasonable cause for not filing the inventory within the statutory time. The trial court concluded that the executor had not satisfactorily explained or shown reasonable cause for the delay. The effect of the holding on appeal was merely that the trial court's finding that the executor had neglected the estate was supported by the evidence. The Richardson case has no application to the facts in the present case.

Section 521 of the Probate Code provides: ''Whenever a judge of the court has reason to believe from his own knowledge, or from credible information, that any executor . . . is incompetent to act, . . . he must cite such executor or administrator to appear and show cause why his letters should not be revoked, and may suspend his powers until the matter is investigated.'' Section 522 reads: ''Any person interested in the estate may appear at the hearing and file allegations in writing, showing that the executor or administrator should be removed; to which the executor or administrator may demur

or answer, and the issues shall be heard and determined by the court." Section 523 provides that if the executor appears "and the court is satisfied *from the evidence* that there exists cause for his removal, his letters must be revoked." (Italics added.) Section 1230 provides that "All issues of fact joined in probate proceedings must be tried in conformity with the requirements of the rules of practices in civil actions . . ."

 Whenever a judge has reason to believe from his own knowledge or from credible information that an executor is incompetent to act he may, but is not required to, suspend his powers before citing him to appear and show cause why his letters should not be revoked. (*Estate of Healy,* 137 Cal. 474, 475-476 [70 P. 455].) Suspension is not a necessary step looking to a removal of an executor. Suspension may take place without a citation, notice, or hearing; while removal cannot. (*Estate of Kelley,* 122 Cal. 379, 382 [55 P. 136].)

 Upon obtaining the information specified in section 521, it is the duty of the judge to cite the executor to appear and show cause why his letters should not be revoked. He may not remove an executor on any of the grounds specified in section 521 without citing him to appear and giving him a fair hearing and an order predicated on evidence. (See *Schroeder* v. *Superior Court,* 70 Cal. 343 [11 P. 651].)

*In re Moore,* 83 Cal. 583 [23 P. 794], was an appeal from an order removing an administrator. Prior to the proceeding in which the order was made, a petition for the removal was heard and denied. The widow petitioned to be appointed administratrix on the ground that two years previously the administrator had been committed to an insane asylum. Her petition was denied and she appealed. On appeal it was held that the fact the administrator had been sent to an insane asylum did not create an absolute vacancy in the administratorship of the estate; the application having been made after his incapacity had been removed and he had again entered upon the discharge of his duties as administrator, the court properly refused to appoint another in his place. (*Estate of Moore,* 68 Cal. 281 [9 P. 164].) After that decision on appeal, the widow again petitioned for the removal of the administrator on the ground, among others, that he was incompetent to act. The trial court ordered that he be removed. The administrator appealed from that order. The expression of the court in reversing the order is particularly apposite in the case at bar. It said (83 Cal. 586) : "The judgment is clearly

erroneous. If it be conceded that there is an allegation in the petition upon which the finding of the court could be based, there is not a word of evidence in the record to support the finding. The only evidence offered by either party on the question of delay in the settlement of the estate was offered by appellant, and tended to show that the administration of the estate had been prolonged by reason of litigation, for which the administrator was not responsible, but the court, on the objection of respondent, excluded it. If it be assumed that the fact that the administration of the estate was continued for sixteen years without a final account is sufficient *prima facie* to justify the finding, it was clearly error to reject evidence offered by appellant tending to excuse the delay in closing the estate. To show unavoidable delay and good faith, the appellant was entitled to introduce in evidence, if he desired to do so, every paper in the case which tended to show the history of the various proceedings had therein, from their commencement to the time of trial. But as a matter of fact it is apparent that the issue referred to was abandoned by the petitioner at the trial. He made no attempt to prove his allegation. The burden of proof rested on him, and not upon the administrator; but he offered no evidence of negligence or of injury by reason of delay. Appellant had the right to rely upon the presumption of fair conduct and faithful performance of official duty until something was offered by the petitioner tending to overcome it; and the mere fact that the proceeding had been pending for sixteen years did not throw upon him the duty of disproving the charge of negligence.

"The court could not of its own motion remove the administrator without giving him an opportunity to be heard. (Code Civ. Proc., secs. 1436-1440 [Now Prob. Code, §§ 521-523].) Nevertheless, this is practically what was done in this case; for not only was there no evidence offered by the petitioner to show unnecessary delay in the settlement of the estate, but as stated before, the administrator was not allowed to introduce evidence in his own behalf, which, if admitted, would have tended to show that for about ten years the widow had been prosecuting a claim for certain sums of money alleged to be due her as family allowance, and that the litigation had terminated only a few days before the trial of this action in a judgment denying her petition. . . . In *Deck's Estate* v. *Gherke,* 6 Cal. 667, it is stated in the statement of facts that the order removing the appellant from the administration was made on an order to show cause. That case is authority only

for the proposition that the appellate court will interfere with the exercise of the power conferred upon the probate judge in such matters only where there has been gross abuse of discretion. All the cases agree upon that matter. Here there was no evidence at all introduced in support of the charge of wrongfully prolonging the administration."

In *Estate of Wacholder,* 76 Cal.App.2d 452 [173 P.2d 359], this court, reversing an order removing an executor, said (p. 464) : "While it is the clear duty of the court to remove an executor or administrator when his unfitness has been proved, it is at the same time the right of every trustee to receive full acquittance of charges impugning his integrity or competence which are not established by clear and satisfactory evidence."

 Where the statute prescribes the steps necessary to be taken to remove an executor, the statutory requirements must be complied with, and an order of removal not predicated on such compliance is unauthorized and ineffectual. (33 C.J.S. 1039, § 91b.) Before an executor is removed he must be accorded a hearing and the court must have some fact legally before it in order to justify removal. The facts relied on for removal must be established by evidence, and any proper evidence which tends to establish or refute the charges relied on is admissible. (*Hanifan* v. *Needles,* 108 Ill. 403, 409-412; *In re Paull's Estate,* 90 Ohio App. 403 [101 N.E.2d 209]; *In re Glessner's Estate,* 343 Pa. 370 [22 A.2d 701]; *In re Burr,* 118 App.Div. 482 [104 N.Y.S. 29]; 33 C.J.S. 1042, § 91f & g.)

*Luckey* v. *Superior Court,* 209 Cal. 360 [287 P. 450], relied on by respondent, is not analagous. In Luckey an administrator was removed. A hearing was had. The proceeding was not instituted pursuant to section 1436 of the Code of Civil Procedure, now section 521 of the Probate Code. The present proceeding was had under section 521. The nub of the holding of the Luckey case is that an administrator may be removed on grounds other than those specified in section 521. (See *Estate of Guzzetta,* 97 Cal.App.2d 169 [217 P.2d 460].)

The fundamental conception of a court of justice is condemnation only after notice and hearing. No one may be deprived of anything which is his to enjoy until he shall have been divested thereof by and according to law. Under the constitutional guaranties no right of an individual, valuable to him pecuniarily or otherwise, can be justly taken away without its being done conformably to the principles of justice

which afford due process of law, unless the law constitutionally otherwise provides. ▮▮▮ Due process of law does not mean according to the whim, caprice, or will of a judge (*Matter of Lambert*, 134 Cal. 626, 632-633 [66 P. 851, 86 Am.St.Rep. 296, 55 L.R.A. 856]); it means according to law. It excludes all arbitrary dealings with persons or property. It shuts out all interference not according to established principles of justice, one of them being the right and opportunity for a hearing: to cross-examine, to meet opposing evidence, and to oppose with evidence. (*Massachusetts etc. Ins. Co.* v. *Industrial Acc. Com.*, 74 Cal.App.2d 911 [170 P.2d 36].)

Judicial absolutism is not a part of the American way of life. The odious doctrine that the end justifies the means does not prevail in our system for the administration of justice. The power vested in a judge is to hear and determine, not to determine without hearing. ▮▮▮ When the Constitution requires a hearing, it requires a fair one, one before a tribunal which meets established standards of procedure. It is not for nothing that most of the provisions of the Bill of Rights have to do with matters of procedure. ▮▮▮ Procedure is the fair, orderly, and deliberate method by which matters are litigated. ▮▮▮ To judge in a contested proceeding implies the hearing of evidence from both sides in open court, a comparison of the merits of the evidence of each side, a conclusion from the evidence of where the truth lies, application of the appropriate laws to the facts found, and the rendition of a judgment accordingly.

The constitutional right to notice and hearing cannot be taken away in the fashion that was attempted in the present case. The judge's conception of his duty was entirely erroneous. The plainest principles of justice required that appellant be given notice of the specific charges against him. No notice was given him that he was to be removed on the ground that he was so mentally deranged as to be incompetent to act as executor. If the judge had reason to believe from what was told him in chambers, or from appellant's conduct, or from both, that he was incompetent to act, he had the authority to suspend his powers. He had no authority or power, without notice or hearing, to remove him. Appellant was not only not accorded a just, fair, and impartial hearing; he was not accorded the right or opportunity of any hearing, either on the charge that the inventory was not filed in time or on the ground, not charged, that he was so mentally deranged as to be incompetent to act as executor. No legal evidence was pro-

duced that he was incompetent to act. He was denied the opportunity of presenting any evidence. His offer of proof was erroneously rejected. In short, he was denied due process of law.

Reversed.

Wood (Parker), J., concurred.

SHINN, P. J.—I concur: The judge noticed that petitioner was emotionally upset by the proceedings and for that reason removed him. Under the circumstances the fact that appellant was disturbed by what was going on was not evidence of incompetency. It was enough to disturb any normal, self-respecting person.

A petition for a rehearing was denied March 15, 1954, and respondent's petition for a hearing by the Supreme Court was denied April 21, 1954.