[Civ. No. 21090.   Second Dist., Div. One.   Dec. 30, 1955.]

Estate of HARRY G. BUCHMAN, Deceased. CITIZENS NATIONAL TRUST AND SAVINGS BANK OF LOS ANGELES, Respondent, v. HAMLIN K. BUCHMAN, as Executor, etc., Appellant.

Morris Lavine for Appellant.

Edward Alton and Paul P. Selvin for Respondent.

NOURSE (Paul), J. pro tem.*—This is an appeal by Hamlin K. Buchman, as executor of the estate of Harry G. Buchman, from a judgment settling the account of the respondent Citizens National Trust and Savings Bank, and allowing to the respondent, as special administrator, statutory commissions and commissions for extraordinary services, and allowing to its attorney statutory and extraordinary fees.

This is the third appeal from orders made in this probate proceeding. The following is a statement of those facts necessary to a decision of the present appeal. The entire history of the matter may be obtained from the opinions in the two former appeals (see *Estate of Buchman*, 123 Cal. App.2d 546 [267 P.2d 73]; *Estate of Buchman*, 132 Cal.App. 2d 81 [281 P.2d 608]).

Harry G. Buchman died September 4, 1951. Shortly thereafter special letters of administration were issued to appellant here, and in October the will of decedent was admitted to probate and letters testamentary were issued to appellant. Thereafter, appellant published notice to creditors and filed inventories and appraisals. He thereafter, as special administrator and as executor, filed reports and accounts. His then counsel filed a petition for fees and Claire Morse filed a petition for partial distribution and caused a citation to be issued to appellant to show cause why he should not be removed as executor and his letters testamentary revoked. All of these matters, together with the objection to the accounts of appellant, came on for hearing on March 11, 1953. On March 13, 1953, the trial court (Judge Condee presiding) made a sum-

*Assigned by Chairman of Judicial Council.

mary order removing appellant as executor and a formal order of removal was filed on March 16th and on that day appellant appealed from that order. On the same day, upon the petition of Claire Morse, respondent was appointed special administrator with will annexed and with general powers. It immediately qualified and continued to act as special administrator until May 31, 1954. After the removal of appellant as executor, and during the year 1953, the trial court entered its orders settling the several accounts previously filed by appellant and a decree granting Claire Morse's petition for partial distribution. From the orders settling his accounts, and from the decree of partial distribution, appellant, as legatee and devisee under the will and as executor, appealed. (See *Estate of Buchman, supra,* 132 Cal.App.2d 81.) On April 29, 1954, the remittitur from the District Court of Appeal upon appellant's appeal from the order removing him as executor and revoking his letters testamentary, and reversing that order, was filed in the superior court. On May 31, 1954, the respondent turned over to appellant all of the assets of the estate which had come into its hands In August, 1954, respondent filed its account as special administrator and its petition for statutory and extraordinary commissions for itself and for statutory and extraordinary fees for its attorney. Appellant filed objections to the account and to the petition and after hearing the trial court (Judge Ross presiding) approved the account and granted the petition for commissions and fees, allowing to respondent as its portion of the statutory commissions, the sum of $2,500 (the total statutory commissions were in the estimated amount of $5,612.16, of which amount the court had, by its order settling appellant's accounts, credited him with the sum of $2,500 against surcharges). It further granted to the special administrator, as compensation for extraordinary services (these services are detailed in the findings which are part of the order) the sum of $5,000. The court granted to Edward Alton, as attorney for the special administrator, the sum of $1,000, as his portion of the statutory fees (there had been theretofore allowed to attorneys who had represented appellant up to the time of his removal the sum of $3,395), and granted to him as fees on account of extraordinary services the further sum of $4,000.

Appellant makes six assignments of error which may be synopsized as follows:

(1) That the trial court was without jurisdiction to make an order appointing respondent special administrator by

reason of the fact that the order removing appellant as executor was void;

(2) That if the order appointing respondent special administrator was valid, its compensation should be charged against Claire Morse's portion of the estate, because it was upon her petition that appellant was removed as executor;

(3) That the evidence is insufficient to justify the allowances made of statutory commissions and commissions for extraordinary services;

(4) That the evidence is insufficient to sustain the award of statutory fees and fees for extraordinary services to the attorney for the special administrator;

(5) That the court erred in its rulings as to the admission of evidence;

(6) That the court erred in not surcharging respondent with interest on certain bank deposits.

■ Appellant's point that the court was without jurisdiction to appoint the respondent special administrator cannot be sustained. Appellant's argument is that this court, having, in the *Estate of Buchman, supra,* 123 Cal.App.2d 546, held that the order removing appellant as executor was void for want of due process of law, that he therefore remained executor at all times and thus the court could not appoint a special administrator. The decision of this court in the cited case was not based upon any want of jurisdiction, for the trial court had jurisdiction of the subject matter of its order and of the person of appellant; the basis of the decision is that the court erroneously exercised its jurisdiction by failing to grant the appellant a fair trial and full opportunity to be heard upon the charges on which the court based its order of removal.

The appeal from that order stayed any further proceedings under it, but it did not revive appellant's letters testamentary which the order revoked, and pending the determination of the appeal from the order, appellant was suspended from office and the court had not only the power but the duty to appoint a special administrator pursuant to the provisions of sections 460 and 465 of the Probate Code (*In re Moore,* 86 Cal. 72 [24 P. 846]; *More* v. *More,* 127 Cal. 460, 462-463 [59 P. 823]; *Guardianship of Jacobson,* 30 Cal.2d 312, 321 [182 P.2d 537].)

■ Appellant's second point that the compensation of the special administrator and of its attorney should be charged against Claire Morse's share of the estate is entirely

without merit. Appellant's argument on this point is that Claire Morse's petition was the basis for the erroneous order and that therefore she should be charged with all of the expense entailed in the special administration. There is so little substance in this contention that it is difficult to answer. In the first place, the petition filed by Claire Morse, and which resulted in the citation of appellant, was a proper petition, and if it had been properly acted upon by the probate court, might or might not have resulted in a valid order of removal. There has, in fact, never been a trial of the issues tendered by her petition, and it is that fact, and the summary action of the probate court in revoking appellant's letters, which resulted in the reversal. The probate court having revoked appellant's letters, Claire Morse rightfully petitioned for appointment of respondent as special administrator, and its commissions and its attorney's fees are chargeable only against the estate.

Respondent, as special administrator, and Mr. Alton, as its attorney, had the right to share in the statutory commissions and fees (Prob. Code, §§ 467, 468). As to how the total statutory commissions and fees should be divided between the executor and his attorneys, and the special administrator and its attorney, was a matter within the discretion of the probate court, and there is nothing in the record here which shows an abuse of that discretion, and we cannot substitute our judgment for that of the court below in determining how these fees should be divided.

As we have heretofore pointed out, the trial court allowed to the respondent $5,000 as compensation for extraordinary services, and to its attorney, $4,000 for extraordinary services. We have come to the conclusion that these awards cannot be sustained. We will treat the awards to the special administrator and to its attorney separately.

The trial court, in its findings, set forth the services which it found to be extraordinary, and without allocating to any one of the services specified by it, any amount as compensation, made a lump sum award covering all of them. The services which were found to be extraordinary are specified in the findings as follows: (a) Accounts of special administrator and executor; (b) operation of apartment houses; (c) Alvin Reinberg claim; (d) the estate of Etta G. King; (e) Joseph A. Golde and Philip E. Golde; (f) H. G. Buchman, Inc.; (g) safe deposit box in Illinois; (h) petition for partial distribution; (i) Social Security claim of Claire Morse; (j) Merritt Marer loan; (k) taxes. Many of these

items on their face appear to be, and careful examination of the transcript demonstrates, that they are services which would be ordinarily performed by an executor or an administrator in the handling of an estate such as this.

█ Statutory commissions and fees are not gratuities, but are the compensation which the statute gives to the personal representative and to its attorney for all services performed by them in their respective capacities from the commencement of probate proceedings until the estate is wound up and distributed, except those that are extraordinary in their nature, that is, services that are remarkable, uncommon or rare (*Estate of Broome,* 162 Cal. 258, 262 [122 P. 470]). █ The personal representative and his attorney are entitled to statutory fees as a matter of right, and the fact that the estate is a simple one and the fees larger than would be adequate compensation for the work involved, does not affect the right to the full statutory compensation.

█ Conversely, if the estate is more complicated and requires more work, effort and skill than is required in the simple estate, that does not change the nature of the services from ordinary to extraordinary. Those undertaking the duties of offices of this character take the bitter with the sweet.

█ Fees in excess of the statutory fees are not a matter of right, but the court may and should, in determining whether or not to award them, and the amount of them, take into consideration several factors, including the question of whether or not the statutory fee constitutes adequate compensation not only for the ordinary services, but for the extraordinary services rendered (*Estate of Fulton,* 23 Cal.App.2d 563, 567 [73 P.2d 664]); the question of whether or not the service rendered was beneficial to the estate, and whether it was necessary (*Estate of Tubbs,* 82 Cal.App.2d 305, 308 [186 P.2d 7]; *Estate of Scherer,* 58 Cal.App.2d 133, 143 [136 P.2d 103]); and the character of the service rendered—that is, was it performed in carrying out the ordinary duties of the personal representative, or was it in fact extraordinary.

█ The services rendered in reducing the estate to possession of the personal representative, the payment of claims and the collection of debts are not extraordinary services, but those ordinarily performed by personal representatives and their counsel in the handling of estates, unless the claims are contested in good faith or the debtor resists payment and litigation results (*Estate of Parker,* 186 Cal. 668 [200 P. 619]; *Estate of Phelps,* 186 Cal. 292 [199 P. 10]).

Section 902 of the Probate Code covers the matter of extraordinary services of personal representatives. The section does not restrict the court in the allowance of extraordinary services to the matters expressly referred to in the section, but it does restrict the services for which extraordinary compensation may be awarded to matters of a similar kind as those enumerated in the statute; in other words, the section is descriptive of the general nature of the services for which extra compensation may be awarded.

The record here establishes without conflict that the service covered by items "c," "d," "e," "f," "g," "h," and "i," heretofore enumerated, was each a very ordinary type of service, and one which a personal representative might expect to be called upon to perform in most estates—there was nothing remarkable, unusual or rare about any of them.

Items "c" and "e" each involved only the settlement of claims against the estate, and as to item "e," the service performed was nothing more than clerical.

As to item "j," the service consisted merely in collecting installments upon a note which was one of the assets of the estate.

The services performed as to items "f" and "g" were a part of the duty undertaken by the respondent to reduce the estate to its possession; they did not involve litigation, but merely investigation and the procuring of stereotype forms of orders from the court.

Item "d" consisted merely of filing of a request for special notice with the executor of another estate. This was but a necessary step in reducing to respondent's possession its decedent's interest in the estate in which notice was requested.

Item "i" was not a service performed for the estate, but a service performed for the widow of the deceased. Respondent is not entitled to compensation for such a service.

In item "h," the services performed were merely the inspection of documents concerning the petition for partial distribution by Claire Morse. While respondent had a right to resist this petition, it did not do so, but remained neutral, and its services in inspecting the decree of partial distribution and other documents were but ordinary services.

Item "a" presents a rather borderline matter. At the time of respondent's appointment as special administrator, the accounts of appellant as special administrator and executor, and the objections thereto by Claire Morse, were before the court for settlement. Combined with these hearings were the

hearings upon petition of appellant's former counsel for extraordinary fees, and Claire Morse's petition for partial distribution. The hearings on these matters were extended and covered a number of days. One of respondent's officers, but not always the same officer, attended throughout the trial, as did Mr. Alton as attorney for respondent, although he had not then been formally substituted as such attorney. It is not clear from the record that there was any necessity for the officers of respondent to attend these hearings. Apparently they attended so that they might familiarize themselves with the estate which respondent had just undertaken to administer. What services these officers could render to the estate, beyond those rendered by respondent's counsel, we have been unable to find from the record.

▉ In view of the fact that the court made a lump sum award and that this lump sum covered services which the trial court erroneously concluded to be extraordinary, makes it necessary to send this matter back to the trial court for further determination of the matter of extraordinary fees.

The trial court, by its findings, also itemized the services of Mr. Alton, which it found to be extraordinary. These services are the same services as those found to be extraordinary on the part of the respondent, except that there is no finding that Mr. Alton performed any services as to item "k" (taxes). What we have said as to certain items of these services being but ordinary services applies equally to Mr. Alton, with one exception. ▉ Mr. Alton's attendance at the hearings on the objections to the accounts of the appellant was a necessary and proper service, and as the court put upon him the burden of preparing the findings and order on that matter, he was certainly entitled to extra compensation for it. But, as the court did not fix the reasonable value of his services in that matter, but made a lump sum award which covered compensation for services which were not extraordinary, its award cannot be sustained.

▉ Appellant complains of certain rulings of the trial court in regard to the rejection of evidence offered by him. In the main, this evidence covered his offers to prove the salaries paid to the officers and employees of respondent who performed services in connection with respondent's administration of the estate. While the total cost to a corporate administrator of performing services of an extraordinary character might be a relevant subject of inquiry, the evidence covered by the offers of proof made by appellant would not have been

of aid to the court, for the salaries paid to employees is but one item of respondent's cost. The refusals of the offers of proof were not, therefore, prejudicial.

Appellant also claims that the court erred in admitting one of the bank's records which showed the time expended by various officers and employees of the bank in the administration of the estate. An examination of the record discloses that a proper foundation was established for the admission of this document as a business record, and the court was justified in exercising its discretion in admitting it.

Appellant also complains because the court did not surcharge the respondent with interest on certain monies deposited by it in its banking department. In its operation of one of the apartment houses, which was a part of the estate administered upon, respondent established a commercial checking account with one of its branches. In this account all rents received from tenants of the apartment house were deposited and against the account all checks in payment of expenses of operation were drawn. Respondent also deposited cash received by it from other sources in an account the character of which is not disclosed by the record. This is to say, we cannot determine from the record whether or not this was a deposit in the name of the estate, or a deposit in the general funds of the trust department of the bank with separate bookkeeping records showing the amounts of principal and income kept as to the estate. The amounts on deposit in these two accounts varied from time to time. In some periods the amounts of deposit were quite large. At other times they were reduced to very small balances. Respondent had the discretion as to whether or not to deposit these funds in a commercial or savings account, and it was for the trial court to determine whether or not it abused that discretion.

Appellant, asserts, however, that under section 920.5 of the Probate Code, respondent was obligated to pay to itself as special administrator interest upon any monies deposited with itself in its capacity as a banker. We do not so read section 920.5. That section requires the bank to pay interest "at the rate of interest prevailing among banks of the locality upon such deposits." The court will take judicial notice that in this locality banks do not pay interest on ordinary commercial checking accounts (see *Sawyer* v. *Southern Calif. Gas Co.*, 206 Cal. 366 [274 P. 544]; *Laack* v. *Dimmick*, 95 Cal.App. 456 [273 P. 50]). Inasmuch as the bank had discretion as to whether to place the money in a savings

account or a commercial account, and as the court impliedly found that it did not abuse its discretion, we cannot hold that it erred in not surcharging respondent with interest.

The order appealed from is reversed insofar as it awards extraordinary compensation to the respondent and to its attorney. The court below is directed to determine what services of an extraordinary nature were necessarily rendered by respondent and its attorney, and the reasonable compensation to which they are entitled for such services. In all other respects the order appealed from is affirmed. Appellant will recover his cost against respondent Citizens National Trust and Savings Bank of Los Angeles.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied January 23, 1956.