Filed 8/6/21  Estate of Wallace CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| Estate of RICHARD B. WALLACE, Deceased. | A161574 |
| MARY J. MURPHY,    Petitioner and Respondent, v. JENNIFER WALLACE,    Objector and Appellant. | (Sonoma County Super. Ct. No. SPR093374) |

Jennifer Wallace appeals from an order granting letters testamentary to Mary Murphy, decedent's surviving spouse.  Wallace contends the trial court "prematurely" issued the letters of administration ahead of a bifurcated trial on the issue of whether Murphy has a right of distribution from the estate as a beneficiary.  For reasons discussed below, we affirm.

## I.  BACKGROUND

Richard B. Wallace[1] (decedent) and Mary J. Murphy were married on June 15, 2004.  About a month before their marriage, Richard and Murphy entered into a premarital agreement.  As relevant to this appeal, paragraph

---

[1] Because Richard Wallace and his daughter, Jennifer Wallace, share the same last name, we refer to them by their first names for clarity.  We intend no disrespect.

No. 16 of the premarital agreement provides: "WAIVER OF RIGHTS ON DEATH OF OTHER PARTY: Each party hereby waives the right to receive any property or rights whatsoever on the death of the other, unless such right is created or affirmed by the other under a will or other written document executed after the date of the parties' marriage." Paragraph No. 13 of the premarital agreement stated, in relevant part: "NO RESTRICTIONS ON TRANSFERS AT DEATH OR NOMINATION OF EXECUTOR: Despite any other provision of this agreement, either party may transfer any property to the other at death or nominate the other as Executor of his or her estate, under a will or other written document executed after the date of the parties' marriage, and the other party may receive such transfer and act as Executor if nominated." Murphy signed the agreement on May 7, 2004, and Richard signed on May 10.

The same day he signed the premarital agreement, Richard executed a "Last Will and Testament" (will) nominating Mary as executor and Steve Nagel as alternate or successor executor and bequeathing his estate to Mary and his children in equal shares.[2] The parties do not dispute that Richard never amended his will, made another will, or revoked the will.

Richard died in July 2019. Shortly thereafter, Murphy filed a petition to admit the will to probate and appoint her as executor. On August 26, Jennifer filed an "Opposition to Appointment of Mary J. Murphy as Personal Representative of Estate, Request to Appoint Second Named Executor Steve Nagel, or alternatively Request for Appointment by entitled party Jennifer

---

[2] The will also expressly stated: "I am presently engaged to be married to Mary J. Murphy. All bequests to her set forth below are contingent upon the marriage occurring. Should the marriage not occur or should we be separated at the time of my death, all bequests to Mary shall lapse and her share shall be divided between my daughters, Jennifer and Natalie."

2

Wallace." Jennifer argued that Murphy had waived the right to receive any property or rights whatsoever from the estate, and "ha[d] further waived the appointment as executor or administrator of the decedent's estate."

Murphy filed a response to Jennifer's opposition, acknowledging that the provisions of the will nominating Murphy as executor and naming her as a beneficiary contradict the provisions of the premarital agreement. Murphy argued the will was valid, Murphy met the qualifications to be named executor, and allowing the premarital agreement to prevail would "quash[ ]" Richard's testamentary intent regarding Murphy. Jennifer filed a reply brief arguing the premarital agreement was duly executed, complied with applicable provisions of the Probate Code, and both parties had been advised by counsel before signing it. Because Richard failed to execute a writing or affirmation after marriage creating property rights or other rights in Murphy, Jennifer urged the court to uphold "the [premarital] agreement and its waivers."

After several continuances due to the COVID-19 pandemic and the parties' efforts to reach a settlement, the trial court set a hearing for November 4, 2020. Both parties filed briefs prior to the hearing, attaching declarations that discussed Richard's testamentary intent.

The trial court issued a tentative ruling before the hearing. Citing *Estate of Buchman* (1954) 123 Cal.App.2d 546, 554, and *Estate of Cole* (1966) 240 Cal.App.2d 324, 329, the trial court observed that "[a] testator has the power to name an executor to administer his or her estate," and " '[a] testator's selection of an executor should not be annulled except on the clear showing that the best interests of the estate require such action.' " The court wrote it was "undisputed that [Richard's] Will nominates [Murphy] as the executor of his estate," and that Jennifer had "not made any showing, let

3

alone a clear showing, that [Richard's] unambiguous intent should be disregarded or that the interests of the estate require a different executor." The court's tentative ruling indicated it would grant the petition for appointment of executor and waive the bond requirement.

The trial court's tentative ruling then addressed "the issue of whether the waiver of rights in the parties' Premarital Agreement precludes [Murphy] from being a beneficiary of [Richard's] Will . . . ." The court found that "when the Premarital Agreement and the Will are viewed together as parts of substantially one transaction, the terms are ambiguous" because "they are capable of two conflicting yet reasonable constructions." The trial court concluded it "must determine the parties' intent and can accept parol evidence in doing so." The court's tentative ruling then indicated the matter would be scheduled for "trial setting on whether [Murphy] has any right to distribution from the estate as a beneficiary."

At the hearing, the court heard argument from the parties. After the hearing, the court adopted its tentative ruling and signed an order granting the petition for probate, appointing Murphy as executor, and ordering the issuance of letters testamentary.

## II. DISCUSSION

Jennifer's appeal challenges the appointment of Murphy as executor of Richard's estate and the issuance of letters testamentary to Murphy.

We review the trial court's decision to appoint Murphy executor for abuse of discretion. (See *Estate of Buckley* (1982) 132 Cal.App.3d 434, 455–457; *Estate of Sapp* (2019) 36 Cal.App.5th 86, 103.) We review the trial court's findings of fact underlying its decision for substantial evidence. (*Estate of Sapp*, at p. 104.)

4

As an initial matter, we must reject Jennifer's claims because she has failed to offer reasoned argument and relevant legal authority demonstrating the trial court erred. " '[T]he most fundamental rule of appellate law is that the judgment challenged on appeal is *presumed correct*, and it is the appellant's burden to affirmatively demonstrate error.' " (*Ruelas v. Superior Court* (2015) 235 Cal.App.4th 374, 383, italics added; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) " 'To demonstrate error, appellant must present *meaningful legal analysis supported by citations to authority* and citations to facts in the record that support the claim of error. [Citations.]' [Citation.] 'Mere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review.' [Citation.] 'Hence, conclusory claims of error will fail.' " (*Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1457.) Here, Jennifer's opening brief contends repeatedly that the trial court erred in "prematurely" issuing letters testamentary ahead of "further proceedings on bifurcated unsettled controversial interpretations of conflicting written instruments," but apart from that conclusory assertion, Jennifer does not offer argument or cite legal authority explaining how the trial court's decision appointing Murphy executor constituted an abuse of discretion.[3]

In her opening brief, Jennifer also cites to briefs and evidence in the record below, apparently asking us to "independent[ly] review" the record, including the arguments made in her trial court briefs, to find fault with the

---

[3] We acknowledge Jennifer's contention that we should engage in independent review because the case involves statutory interpretation and the interpretation of written instruments. Jennifer does not, however, discuss statutory interpretation in her briefing, nor does she discuss how the trial court erred in its interpretation of the will and prenuptial agreement.

trial court's decision to appoint Murphy executor. Such incorporation by reference is an impermissible appellate practice. "It is well settled that the Court of Appeal does not permit incorporation by reference of documents filed in the trial court." (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 294, fn. 20; see *In re Groundwater Cases* (2007) 154 Cal.App.4th 659, 690, fn. 18 ["We . . . remind counsel that 'it is entirely *inappropriate* for an appellate brief to *incorporate by reference* documents and arguments from the proceedings below' "]; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 109 ["An appellant cannot rely on incorporation of trial court papers, but must tender arguments *in the appellate briefs*."].) If an appellant merely incorporates by reference arguments made in papers filed in the trial court, appellant's contention will be deemed forfeited on appeal. (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 656.)

Accordingly, we conclude Jennifer has forfeited her right to appellate review of the trial court's decision, and we affirm the judgment on that basis.

In any event, even if we were to consider the merits of Jennifer's claim, we would conclude on this record she has failed to demonstrate reversible error.

"In reviewing evidence on appeal, all conflicts must be resolved in favor of the prevailing party, and all legitimate and reasonable inferences must be indulged in order to uphold the trial court's finding." (*In re Marriage of Hill & Dittmer* (2011) 202 Cal.App.4th 1046, 1051, citing *In re Marriage of Bonds* (2000) 24 Cal.4th 1, 31.) "In that regard, it is well established that the trial court weighs the evidence and determines issues of credibility and these determinations and assessments are binding and conclusive on the appellate court." (*Hill & Dittmer*, at pp. 1051–1052.)

6

Jennifer does not challenge the admissibility or validity of the will executed at the same time as the premarital agreement.  The trial court found the will "valid on its face" and noted it was "undisputed that [Richard's] Will nominates [Murphy] as the executor of his estate."  Citing *Estate of Hammer* (1993) 19 Cal.App.4th 1621, 1634, the trial court reasoned that a testator's selection of an executor should not be annulled except on a clear showing that the best interests of the estate require it, and found that Jennifer had "not made any showing, let alone a clear showing, that [Richard's] unambiguous intent should be disregarded or that the interests of the estate require a different executor."  Appellant has not shown or explained why those findings were not supported by substantial evidence or why the trial court's ruling was an abuse of its discretion.

## III.  DISPOSITION

The trial court's order appointing Murphy executor is affirmed.

MARGULIES, ACTING P. J.

WE CONCUR:

BANKE, J.

SANCHEZ, J.

A161574
*Estate of Wallace*

8