[Sac. No. 817.    Department Two. — August 24, 1901.]

## J. A. VAN HARLINGEN, Appellant, v. J. B. DOYLE, Auditor of Tuolumne County, Respondent.

County Government Act — Invalid Limitation of Supplies and Printing — Constitutional Law. — That portion of section 25 of subdivision 21 of the County Government Act which provides that "no supplies, printing, stationery, or books shall be procured of any person or firm whose paper has not been established or whose place of business has not been established in the county for one year or more prior to the time of fixing said prices," is unconstitutional and void. It violates section 11 of article I of the constitution, requiring that "all laws of a general nature shall have a uniform operation," and section 21 of the same article, which forbids that "any citizen or class of citizens be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens."

Id. — "Uniform Operation" of Law — Classification — Duration of Business not a Proper Basis. — In order that a general law may have a uniform operation, it must be based upon a classification which is not arbitrary, but founded upon some natural or intrinsic or constitutional distinction. All merchants and publishers of newspapers stand in the same relation to supplies and advertising for the county; and they cannot be arbitrarily classified by the period of time during which they have engaged in business in the county.

Id. — Printing for County Officers — Separation of Valid from Invalid Provisions — Repeal of Code Section. — The provisions of section 25 of subdivision 21 of the County Government Act relating to supplies furnished and printing and advertising done for county officers by a person or newspaper, to be designated by them, at prices fixed for the county printing, are valid, and separable from the invalid provisions of that section, and being inconsistent with section

3766 of the Political Code, and later in date, have worked a repeal of that section.

ID. — PRINTING DELINQUENT TAX LIST — PAYMENT BY SUPERVISORS — INJUNCTION AGAINST AUDITOR. — When the delinquent tax list was published by the tax-collector in the only newspaper that was willing to publish it at the prices fixed by the supervisors for county advertising, and the county had allowed the claim therefor upon the certificate of the tax-collector, an injunction will not lie to restrain the county auditor from drawing the warrant for the allowed claim on the ground that such newspaper had not been published in the county for one year prior to the advertising.

APPEAL from a judgment of the Superior Court of Tuolumne County. G. W. Nicol, Judge.

The facts are stated in the opinion.

J. B. Curtin, for Appellant.

F. W. Street, and F. P. Otis, for Respondent.

CHIPMAN, C. — Action to restrain defendant, as auditor of Tuolumne County, from drawing a warrant to pay the claim of one Richardson for printing the delinquent tax list for the year 1898 in a newspaper called the Mother Lode. The court found that Richardson was the proprietor of the paper on May 27, 1899, and that the tax-collector of the county on that day caused the delinquent tax list for the year 1898 to be published in said paper for the period required by law; the list was duly published, and the bill for the work was allowed and ordered paid by the supervisors; the said newspaper was first printed in said county on January 20, 1897, and continued to be printed until September 24, 1898, when the printing was suspended, and was resumed on the twenty-seventh day of May, 1899, since which latter date, inclusive, the paper has been published; on May 3, 1899, the supervisors fixed the rate of printing and advertising in said county, in accordance with subdivision 21 of section 25 of the County Government Act, approved April 1, 1897 (Stats. 1897, p. 452, at p. 464); the tax-collector offered said delinquent tax list to all the newspapers printed, published, and established for one year prior to the third day of May, 1899, in said county, and each and all the proprietors of said newspapers refused to publish said list at the price fixed by said supervisors; thereupon said tax-collector caused the list to be published in said Mother Lode,

at the rates fixed by the said supervisors. Judgment was given for defendant, from which this appeal is prosecuted.

Appellant contends that the printing of the delinquent tax list by the Mother Lode newspaper was in violation of section 3766 of the Political Code, which, as amended in 1895, provides that "the publication must be made once a week in some newspaper, or in a supplement thereof, published in the county, and the board of supervisors must contract for such publication with the lowest bidder, and after ten days' public notice that such will be let. The bidding must be by sealed proposals." Subdivision 21 of section 25 of the County Government Act requires the board of supervisors of the several counties to advertise for sealed bids for furnishing the county with stationery and various other supplies. Then follows this provision: "The board shall annually fix the price at which the county shall be supplied with job-printing and blank-books, from a schedule prepared by the clerk of the board, showing all blanks and blank-books used in the several offices and departments, and also the price of all county advertising; and each county officer shall procure such blank-books, job-printing, and advertising required for the proper discharge of his official duties, such printing and advertising to be done by such person or newspaper as such officer may designate, at a price no greater than is so fixed, and certify the bill therefor to the board of supervisors. . . . *No supplies, printing, stationery, or books shall be procured of any person or firm whose paper has not been established, or whose place of business has not been established, in the county for one year or more prior to the time of fixing said prices.*" Section 11 of article I of the constitution provides that "all laws of a general nature shall have a uniform operation." Section 21 of the same article reads as follows: "No special privileges or immunities shall ever be granted which may not be altered, revoked, or repealed by the legislature; *nor shall any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens.*"

The trial court held that the part of section 25 of the County Government Act stated in italics is unconstitutional. The advertising was let under the other provisions of the act, which, being inconsistent with the section of the Political Code referred to, and later in date, worked its repeal. It was within the power of the legislature to require the supervisors to annu-

ally fix the price of certain county supplies and all county advertising, and to allow each officer requiring any advertising or such supplies to procure the same at the prices so fixed, and certify the bill to the board. These provisions of the law are clearly separable from the part claimed to be unconstitutional, and may stand, although that part be set aside. After failing to procure the advertising by any of the older established newspapers, the supervisors let the printing to the Mother Lode newspaper, in disregard of the requirement above referred to. We are to determine whether the bill for this work is illegal. An act of the legislature is not to be set aside upon any doubtful or uncertain construction to be given the constitution. But where its infraction is clear and unmistakable, the duty of the court is plain, and should be fearlessly performed. That the part of the act now drawn in question is violative of the organic law of the state, we think can admit of no doubt. It declares that county officers shall not supply the county requirements except through persons who have had established places of business in the county for a fixed period of time. No reason can be suggested why this period of time was not made longer or shorter, and the power which could fix it at one year could name any other period not absurdly or unreasonably long or short. The act manifestly was intended to limit all job-printing and advertising, and purchases of blank-books, to persons who had established places of business in the county, to the exclusion of all others. Not only must the purchases be made from and the advertising be done by persons having established places of business in the county, but such places of business must have been established for one year prior to the time when the prices are fixed by the supervisors. The unfortunate merchant or newspaper proprietor who engages in business in the county the day after the supervisors fix the prices to be paid for supplies or for printing is precluded for one year from competing for the county's patronage. He must contribute to the county's support by paying taxes, and he must perform whatever duties the law devolves upon him as a citizen of the county, but he may not share in the privilege of dealing with the county officers in respect of county supplies and printing,— a privilege which the law accords to the more fortunate merchant or printer who happened to have started in the business one day sooner than he. We think the constitution was intended to prohibit all such dis-

criminatory legislation.  If the legislature may restrict county officers in their purchases for the county to a class of dealers who have had an established business in the county for one year, it may restrict them to still other classes which the legislature may create.  Such laws cannot be regarded as general laws, for the reason that they are not uniform in their operation.

Appellant contends that a newspaper which has not been established and published for one year does not stand upon the "same terms" in relation to the law as does the newspaper which has been published for one year; that the term "all citizens" does not necessarily include all persons, but only all citizens, who stand in the same relation to the law.  As illustrative of the principle relied on, we are cited to *Smith* v. *Judge of Twelfth District*, 17 Cal. 556; *In re Madera Irrigation District*, 92 Cal. 309; *Hellman* v. *Shoulters*, 114 Cal. 136; *Fontain* v. *Smith*, 114 Cal. 497.  In speaking of laws of general nature which must have a uniform operation, the court said, in *Hellman* v. *Shoulters*, 114 Cal. 136: "It has been uniformly held that a law is general which applies to all of a class, — *the classification being a proper one*, — and that the requirement of uniformity is satisfied if it applies to all of the class alike." (Citing *Smith* v. *Judge of Twelfth District*, 17 Cal. 556.)  But whether the classification in the present case is a proper one, is the very point involved.  We do not think the legislature can arbitrarily create the class, and when thus created, that the courts are in all such cases bound to accept such classification as a proper one.

It was said in *Abeel* v. *Clark*, 84 Cal. 226, "that an act, to be general in its scope, need not include all classes of individuals in the state; it answers the constitutional requirements if it relates to and operates uniformly upon the whole of any single class."  But this statement was commented upon in *Pasadena* v. *Stimson*, 91 Cal. 238, as erroneously supposed to support the proposition "that a law is not special if it applies equally to all members of any single class defined by the legislature, no matter how arbitrary and senseless the classification may be." And it was said, that "although a law is general and constitutional when it applies equally to all persons embraced in a class founded upon some natural or intrinsic or constitutional distinction, it is not general or constitutional if it confers particular privileges or imposes peculiar disabilities or burden-

some conditions, in the exercise of a common right, upon a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law." All merchants and publishers of newspapers in a county stand in precisely the same relation to the subject of the law in furnishing supplies and doing the advertising for the county. But the act confers particular privileges upon certain merchants and publishers, and imposes peculiar disabilities and burdensome conditions on other merchants and publishers, all of whom stand in the same relation to the law. It was not within the power of the legislature to evade the operation of the constitutional provisions by creating an arbitrary and unnatural distinction between persons thus related to the law. If it were possible to classify merchants and publishers of newspapers in any case so as to apply one law to one class and another law to another class, it is certain that they cannot be classified upon any such line of demarcation as is attempted in this act. *Fontain* v. *Smith*, 114 Cal. 497, cited by appellant, involved the constitutionality of section 2853 of the Political Code, prohibiting the supervisors from authorizing the establishment of a toll-bridge or ferry within one mile above or below a regularly established ferry or toll-bridge. It was held that the section grants no privileges or immunities which, "upon the same terms, shall not be granted to all citizens." The court said: "The theory upon which such rights are granted is, to promote the public good and convenience, the advancement of commerce, and the more ready intercourse of the people; and a reasonable protection of those who hazard their private means in thus ministering to the public need is in the interest and direction of good government, by encouraging enterprise." No such theory or reason can be said to support the legislation in question. On the contrary, the law operates to prevent competition, where the highest interests of the people require free and untrammeled business intercourse. It would puzzle the mind to suggest any natural, intrinsic, or constitutional distinction with which a newspaper that has been established thirteen months is clothed or may be clothed, that a newspaper established eleven months may not possess. We can perceive no possible public good to come from the distinction made by the law before us, while it is easy to suggest much harm that it may do. All the older established newspapers in the county

refused to do the work at the prices fixed by the board, which we must assume were fair and reasonable. It is now insisted that the county has no right, under the law, to have the printing done, because the newspaper designated does not stand upon the same terms in relation to the law as the other newspapers. But the only reason why it does not stand upon the same terms results from no natural, intrinsic, or constitutional distinction, but from an arbitrary and unreasonable distinction created by the law itself. It is one of the highest privileges of the citizen that he may engage in legitimate business upon equal terms — "the same terms"— granted to all citizens. He may buy and sell from whom and to whom he pleases. The law may require him to pay a license for the privilege, and it may regulate his business if the safety of the community requires its regulation. But the law cannot say that he must have conducted an established business for a given period of time before he can sell to a county officer, while he may sell without restriction to all other persons. As well might the legislature say that the county shall not employ any citizen of the county to work on the public road unless he has resided within the county one or more years. (See Cooley's Constitutional Limitations, 4th ed., *393.)

The county of Lassen undertook by ordinance to require owners of sheep to pay a license on sheep grazed in that county, on which the county and state taxes were paid in another county, but exempting from the license the owner who paid taxes on his sheep in Lassen County. This court held the ordinance to be in violation of section 21 of article I of the constitution. (*County of Lassen* v. *Cone,* 72 Cal. 387.) There was no question but that the county could pass a license ordinance applicable alike to all owners of sheep, and such an ordinance was upheld in *Ex parte Mirande,* 73 Cal. 365; *County of El Dorado* v. *Meiss,* 100 Cal. 268. But the Lassen County ordinance granted a privilege to the resident owner of sheep which it denied to the non-resident owner; it allowed the resident owner the privilege of grazing sheep in Lassen County, free from any license tax, while imposing such tax on the non-resident owner; and it was thus held to have violated the constitution. Nor does the fact that, in the present case, the restriction was limited to dealings with the county officers relieve the act from its discriminating character. That plain-

tiff was permitted to publish advertisements for all persons save only the county officers but emphasizes the obnoxious feature of the law.

The judgment should be affirmed.

Smith, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.        McFarland, J., Temple, J., Henshaw, J.