[Civ. No. 756.   Third Appellate District.—February 11, 1911.]

In the Matter of the Estate of EDWIN CHADBOURNE, Deceased. DENNIE MAY CHADBOURNE, Respondent, v. F. A. CHADBOURNE, Appellant.

ESTATES OF DECEASED PERSONS—FAILURE OF EXECUTOR TO PUBLISH NOTICE TO CREDITORS IN TIME—REVOCATION OF LETTERS—EXCUSE—DISCRETION OF COURT.—Although the provisions of section 1511 of the Code of Civil Procedure, taken literally, lend support to the

decision of the trial court that it is mandatory upon it to revoke the letters testamentary of an executor for failure to publish notice to creditors within two months, regardless of excuse, the more reasonable view is that the legislature intended to vest the trial judge with a wise discretion in the revocation of letters, and to confer upon it the power to decline to revoke the letters if it appears that the failure to publish the notice within the statutory period is satisfactorily excused.

ID.—POLICY OF LAW TO GIVE EFFECT TO WILL—NOMINATION OF EXECUTOR.—It should be and is the policy of the law to give effect, as far as it can be legally done, to the expressed will of the deceased. The nomination of the executor is evidence of the confidence reposed in him by the testator, and the deliberate purpose and desire thus solemnly expressed as to the administration of the estate should not be thwarted unless the plain provisions of the law or the interests of justice demand it. The provisions of the will reposing special confidence in him should not be laid out of view where there may be a question as to what the legislature intended in a provision as to the removal of an executor; and it should rather incline the court to give to the law a construction as favorable as possible to the executor, where he has not shown himself to be incompetent, corrupt or grossly negligent.

ID.—PURPOSE OF LAW TO BE CONSIDERED.—When the purpose of the law is apparent, it should be given effect, since whatever is within the purpose of the lawmaker is as much part of the statute as if it was within the letter. To carry out the purpose of the law it is held in many cases that the words "shall" and "must" may be considered directory merely.

ID.—USE OF WORD "NEGLECTS" IN STATUTE.—The use of the word "neglects" in section 1511 of the Code of Civil Procedure indicates clearly the purpose of the law to clothe the court with some discretion. "To neglect" and "to omit" are not synonymous. "To neglect" is to omit by carelessness or design.

ID.—DUTY OF EXECUTOR TO PUBLISH NOTICE—BURDEN TO SHOW EXCUSE. It is the duty of the executor to publish the notice as the law requires. He has no discretion in that regard; but if by excusable neglect he omits to do so, the burden is upon him to show such excusable neglect, and if such excuse appears and the estate has suffered no loss by reason thereof, the excuse should be accepted.

ID.—ENDEAVOR OF EXECUTOR TO HAVE LETTERS PUBLISHED—DIRECTION OF ATTORNEY TO STENOGRAPHER.—Where it appears that the executor honestly endeavored to have the notice published, and requested his attorney to prepare and publish it, and the attorney delegated the work to his stenographer, who by oversight omitted to publish it in time, the oversight of the stenographer, though regrettable, is not of sufficient gravity to authorize the removal of the executor.

ID.—FORFEITURE OF OFFICE NOT FAVORED.—The forfeiture of an office is not favored, and provisions having that effect are to be strictly construed to avoid such forfeiture; and if the statute can be reasonably interpreted to avoid the forfeiture, it should be so construed.

ID.—REVERSAL OF ORDER REMOVING EXECUTOR.—It is held that under all the circumstances appearing, the trial court was not justified in revoking the letters of the executor for an honest mistake which was not the result of gross carelessness, and which was productive of no positive injury to the estate, and that the order must be reversed.

APPEAL from an order of the Superior Court of Solano County revoking letters testamentary to an executor. A. J. Buckles, Judge.

The facts are stated in the opinion of the court.

T. T. C. Gregory, and Theodore W. Chester, for Appellant.

Paul C. Harlan, for Respondent.

BURNETT, J.—The appeal is from an order and judgment removing F. A. Chadbourne, a brother of the testator, from the office of executor for failing to publish notice to creditors within the statutory period of two months. The proceeding was based upon section 1511 of the Code of Civil Procedure, and was instituted by Dennie May Chadbourne, the widow of deceased, and a coexecutor with appellant.

Appellant obtained an order for publication of the notice on the day he was appointed executor, and on the same day he went with his attorney to the office of the latter and the attorney's stenographer was instructed to have the notice to creditors published in the "Solano County Courier," the paper selected by said F. A. Chadbourne. Both appellant and his attorney believed that the notice had been published, but some four weeks after the said order was made, for additional assurance, said attorney sent his stenographer to the office of the county clerk to see if the affidavit of publication of notice to creditors was on file, and she reported that it was, mistaking for the one in question the "affidavit of publication of time set for proving the will." Not until the petition of respondent was filed did appellant or his attorney even sus-

pect that said notice to creditors had not been published. There is no kind of doubt that they both acted in the utmost good faith and with a sincere purpose to discharge promptly their legal duty. It may be said, also, that it does not appear that by reason of the delay in the publication of said notice any detriment was caused to said estate. As to that, it was found by the court below "That no damage of any kind has been caused, nor any damage accrued to said estate by reason thereof, other than such as may arise from delay in administering the estate herein."

It is asserted by appellant, and not disputed by respondent, that the trial judge made the order of removal because he felt constrained to hold that he had no discretion in the premises, believing that the said section is mandatory in its nature. From the opinion filed in the cause appellant makes the following quotation: "The provisions of section 1511 seem to me to be mandatory, and leave no discretion whatever in the court as to the revocation of the letters. There is no doubt but what it would have been better if the administration of this estate could have gone on without friction or interruption. There seems to be nothing for the court to do but revoke the letters of both Fred A. Chadbourne and also of Dennie May Chadbourne." While the opinion of the trial judge is manifestly no part of the record here, and is not subject to review, yet counsel seem to concede that it may be accepted as indicative of the court's interpretation of the statute and as suggestive of the vital point involved in the controversy.

It may be admitted at the outset that the provision taken literally rather lends support to the trial court's decision. The section is as follows: "If an executor or administrator neglects for two months after his appointment to give notice to creditors, as prescribed by this chapter, the court must revoke his letters, and appoint some other person in his stead, equally or the next in order entitled to the appointment."

We think, however, that the more reasonable view is that it was not intended by the legislature that in every case where there is an omission for two months to publish said notice, the court is required to revoke the letters. There are certain considerations suggested by appellant, cognate to the main inquiry, which make this contention more readily acceptable and which point to the conclusion that it was the intention of the

legislature to invest the trial judge with a wise discretion in the removal of executors or administrators, and to confer upon him the power to decline to revoke the letters if it appears that the failure to publish within the statutory period is satisfactorily excused.

In the first place, it should be and is the policy of the law to give effect, as far as it can be legally done, to the expressed will of the deceased. The nomination of the executor is evidence of the confidence reposed in him by the testator, and the deliberate purpose and desire thus solemnly expressed as to the administration should not be thwarted unless the plain provisions of the law or the interests of justice demand it. In the case at bar the testator required no bond nor security of any kind for the faithful discharge of the duties of executor, and, as further evidence of his faith in F. A. Chadbourne's fidelity, he constitutes him, in connection with two other brothers, the trustee of a fund of $5,000 for the education of the two sons of the testator. The foregoing is not, of course, a controlling circumstance; it would not justify an interpretation of the law in opposition to the plain will of the legislature, but it should not be laid out of view where there may be a question as to what the legislature intended in a provision relating to the removal of an executor. At least, it should rather incline the court to give to the law a construction as favorable as possible to the executor, where he has not shown himself to be incompetent, corrupt or grossly negligent. It has been declared that "the principle governing the disposition of applications such as this is expressed in the phrase 'whom the testator will trust so will the law.' The executor is the confidential agent solemnly chosen by the testator to execute his wishes as they may be expressed in his will. To this agent the testator confides a most sacred trust. The person who accepts it accepts great obligations to the living and the dead, and if he be alive to the binding force of those obligations and determined to discharge them bravely and honestly without partiality or preference, it will rarely if ever happen that he will be called upon to defend himself against a charge of misconduct or personal unfitness. Under the rules so familiar to all, we are not permitted to lightly pass over the wishes of the person who lives but in the memory of possibly the very one chosen to represent him after death and whom it is sought

to displace. The reason for taking away the authority of a person so chosen should be well grounded upon undoubted proof of his utter improvidence and unfitness for the duties of his trust.'' But beyond this, the courts have generally extended to administrators a similar consideration, and they have manifested a reluctance to remove them unless compelled to do so. It is thus expressed in 18 Cyc. 165: ''The courts are reluctant to remove an executor or administrator where no strong cause exists therefor and it does not clearly appear that retaining the representative in office will jeopardize the interests of the estate.'' In *Haines* v. *Carpenter*, 1 Wood, 262, [Fed. Cas. No. 5905], it is said: ''A strong case must be made out to induce the court to take possession of the property from an executor who has qualified and given bond for the faithful discharge of his trust and has taken possession under the will.'' And the supreme court of this state has said, in the *Estate of Graber*, 111 Cal. 434, [44 Pac. 165], that ''To revoke or forfeit letters testamentary or of administration, *ipso facto*, by a statute, is most rigorous treatment and we would not be inclined so to construe the law, unless the intention of the law-making power to that effect was plainly manifest.''

We must assume that the legislature had before it this policy of the law when it enacted the statute in controversy. And while the language upon its face seems to be mandatory, the cardinal canon of interpretation requires, of course, that we give effect to the intention of the lawmakers, though it may seem opposed to the letter of the statute. This is well expressed by Judge Thayer in *Chauncey* v. *Dyke Bros.*, 119 Fed. 9, [55 C. C. A. 587], as follows: ''We are aware that some courts have at times expressed, in strong terms, the necessity of pleading and enforcing statutes literally without regard to consequences. Some of these utterances have been called to our attention. But this doctrine of literalism which clings to the letter of a statute and ignores its purpose is not well calculated to promote the ends of justice. It is not the duty of a court of justice to perpetuate mistakes inadvertently made by the lawmaker by a blind adherence to the letter of the law, when the *purpose* of the law is apparent. Legislative bodies are not always fortunate in the use of language, but if careful attention is paid to all the provisions of a

statute as well as to the conditions which led to its enactment, little difficulty will generally be experienced in ascertaining what was intended. When the purpose is disclosed it should be given effect, since whatever is within the intention of the lawmaker is as much within the statute as if it was within the letter.''

In accordance with this primary rule of interpretation courts have construed ''may'' as mandatory, giving it the meaning of ''shall'' or ''must'' (*Estate of Ballentine*, 45 Cal. 699; *Hayes* v. *County of Los Angeles*, 99 Cal. 74, [33 Pac. 766]; Sutherland on Statutory Construction, sec. 634); and in many cases it is held that *shall* and *must* are directory merely. (*Wallace* v. *Feeley*, 61 How. Pr. (N. Y.) 225; *Merrill* v. *Shaw*, 5 Minn. 148; *In re Thurber's Estate*, 162 N. Y. 244, [56 N. E. 631]; *Stone* v. *Pratt*, 90 Hun, 39, [35 N. Y. Supp. 519]; *First Nat. Bank of Seneca* v. *Lyman*, 59 Kan. 410, [53 Pac. 125]; *Cook* v. *Spears*, 2 Cal. 409, [56 Am. Dec. 348]; *People* v. *Sanitary Dist. of Chicago*, 184 Ill. 597, [56 N. E. 953].)

In *Clancy* v. *McElroy*, 30 Wash. 567, [70 Pac. 1095], the supreme court of Washington had before it a statute quite similar to the one involved herein, and the decision is directly in point. There section 6201 of the statute provided that ''Every executor and administrator shall make and return, upon oath, into the court, within one month after his appointment, a true inventory of the real and personal estate of the deceased which shall come into his possession or knowledge,'' and section 6208 provided that ''If any executor or administrator shall neglect or refuse to return an inventory within the time prescribed, or within such further time, not exceeding three months, as the court shall allow, the court shall revoke the letters testamentary or of administration.'' As stated by appellant, the inventory was not returned within the statutory period, nor was the period extended by the court. It was insisted that the statute was mandatory, it being expressed in mandatory terms, ''the court *shall* revoke,'' and it was urged by petitioner that the court had no discretion where the executor failed to file the inventory within the statutory time. The court, in discussing this claim, said: ''No such statutory provision in the same terms has been

15 Cal. App.—24

brought to our attention, but it is a familiar rule of construction that the spirit as well as the letter must be considered in determining whether its provisions are mandatory or directory. The words 'may' and 'shall' may be used according to the context and intent found in the statute, and are frequently construed interchangeably. From the reading of these two sections in connection with the received construction and nature of probate proceedings and the ordinary discretion of the superior court in such proceedings, it is concluded that the authority of the superior court to remove an executor in this case rests in a sound legal discretion. Considering that the failure of the executor to formally file the inventory was through mere inadvertence and forgetfulness, and the further fact that he was the trustee selected by the testator and otherwise competent to manage the estate, no abuse of discretion is perceived in the court's rulings."

Again, the term "neglects" indicates very clearly that the court is clothed with some discretion. It is not the "omission" or "failure" to publish the notice that demands the removal of the executor or administrator, but if he "neglects for two months after his appointment," etc., the court must revoke his letters. Here also the legislature must have had in mind the well-established significance of the expression. " 'To neglect' and 'to omit' are not synonymous terms. There may be an omission to perform an act or condition which is altogether involuntary and inevitable. To neglect is to omit by carelessness or design." (*New York Guaranty & Indemnity Co.* v. *Gleason*, 53 How. Pr. (N. Y.) 122.)

The Penal Code of this state, section 7, subdivision 2, also provides that "The term 'neglect' imports a want of such attention to the nature or probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns."

In this light the provision must be viewed. The section is the same as though it had provided that if the executor or administrator fails to publish the notice for two months, and his failure is the result of carelessness or design, the court must revoke his letters. Under the view of respondent, if the executor had been prevented by some unavoidable circumstances from making the publication, the result would be the same, since the court has no discretion. We think no such drastic

penalty was contemplated by the legislature.   Of course, it is plainly the duty of the executor to make the publication within the statutory time.   He is commanded to do so, and he should endeavor to comply with the direction of the law.   The statute does not complacently leave it to the discretion of the executor as to the time when this notice shall be published, but its language is imperative as to the time, and if he fails, he must satisfactorily excuse his omission or else his letters will be revoked.   It may be said also that he is commanded to file his inventory within a certain time.   Section 1443 of the Code of Civil Procedure provides that "Every executor or administrator must make and return to the court within three months after his appointment, a true inventory and appraisement of all the estate of the deceased."   Yet if he fails to do so and has a sufficient excuse, the court will overlook his default.   (*In re Graber*, 111 Cal. 434, [44 Pac. 165].)

In the admission by respondent that, under circumstances rendering it impossible for the executor to give the notice within the prescribed limit, his letters should not be revoked, there is, indeed, virtually a concession that the court is vested with some degree of discretion in the premises.

Should this discretion have been exercised in favor of the executor?   It is contended by respondent that his violation of the statutory duty *per se* rendered the executor guilty of negligence, and therefore the decision of the lower court could not have been otherwise.   But respondent insists upon a conclusive presumption where only a disputable presumption exists.   The rule in such cases is that where it appears that a party has failed to perform a duty imposed by the law, the burden is cast upon him to excuse his conduct in order to relieve himself from the penalty.   He would be required to overcome the *prima facie* case presented by the omission to do what the statute requires.   In the Graber case (111 Cal. 434, [44 Pac. 165]), the respondent had not obeyed the mandate of the law, and yet the court below held it was a case of excusable neglect and therein was sustained by the supreme court, it being said: "The fact that such revocation can only take place after notice is a clear indication that the executor or administrator is to be given an opportunity to come before the court and show cause why his letters should not be revoked.   Whether the cause shown be good or bad

is a matter largely within the discretion of the trial court, and when that court has investigated the question and adjudicated upon it, it will only be when a gross abuse of discretion has occurred that the court will interfere.''

So in *Hubbard* v. *Smith*, 45 Ala. 516, where the administrator had failed to return an inventory in the time required by law, the court said: ''He ought to have filed an inventory, as any other administrator is required to do, and to have made annual settlements, but the mere omission to do so when he was not negligent and there has been no detriment to the estate is not ground for removal.''

Indeed, the cases are numerous where there has been a technical violation of the law and yet where the delinquent has been relieved of the penalty on account of inadvertence, surprise or excusable neglect.

As to the degree of care required of an administrator or executor, the authorities are uniform that ''he must act with such prudence and diligence as are generally observed by prudent men of intelligence and discretion in regard to their own affairs.''

The executor here honestly endeavored to have the notice published. He intrusted the matter to his attorney, which is the course ordinarily pursued and which, we may assume, usually results in a compliance with the law. He had every reason to believe, and did believe, that the notice had been published. It is true that he was a subscriber to the paper in which he directed the notice to be published, and it may be a little peculiar that he did not examine the paper for the notice, but he had no reason to suspect that the direction of his attorney would not be carried out. There was no designing neglect, but an oversight on the part of the stenographer, regrettable but scarcely of sufficient gravity to authorize the removal of the executor.

In the *Estate of Welch*, 86 Cal. 183, [24 Pac. 944], it is said: ''While it is the duty of courts to protect carefully the interests of estates, the rights of those who are appointed to take charge of and manage them should not be overlooked, and an administrator should not be removed except for good and sufficient cause.''

In *Heisler* v. *Sharp*, 44 N. J. Eq. 167, [14 Atl. 624], it is said that ''No man is infallible. The wisest make mistakes;

but the law holds no man responsible for the consequences of his mistakes which are the result of imperfection of human judgment and do not proceed from fraud, gross carelessness, or indifference to duty.''

There is also the other consideration of some moment that the forfeiture of an office is involved, and the rule is that such provisions must be strictly construed and forfeiture is not favored. It is so stated in *People* v. *Perry*, 79 Cal. 105, [21 Pac. 423], in this language: ''Provisions for forfeiture of vested rights, whether in statutes or contracts, are not favored, and are, as they ought to be, construed as strictly or as liberally as possible against the forfeiture.''

The burden is upon the party claiming a forfeiture to show that such was the intention of the instrument. If the agreement or statute can be reasonably interpreted so as to avoid a forfeiture, it should be so construed. (*Quatman* v. *McCray*, 128 Cal. 285, [60 Pac. 855].)

Under all the circumstances disclosed, we do not think the court was justified in revoking the letters of Mr. Chadbourne for an honest mistake which was not the result of gross carelessness and which was not productive of any positive injury to the estate. The order is reversed.

Hart, J., and Chipman, P. J., concurred.