[Civ. No. 28883. First Dist., Div. One. Apr. 1, 1971.]

HUEY P. NEWTON, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Garry, Dreyfus, McTernan & Brotsky and Francis J. McTernan for Petitioner.

Thomas C. Lynch, Attorney General, Edward P. O'Brien and Clifford K. Thompson, J., Deputy Attorneys General, for Respondent and for Real Party in Interest.

## OPINION

**SIMS, J.**—The bail of petitioner, charged with manslaughter, was fixed at $50,000 cash by the Alameda County Superior Court. This amount was posted and he was released from actual custody. Thereafter petitioner moved for an order substituting State of California bonds of a face value of $50,000 in lieu of the cash on deposit with the court. The proffered bonds will mature in the year 2015; they bear interest at the rate of 3 percent per annum and have a readily determined present market value of $26,000. Petitioner's motion was denied.

Sought from this court is a peremptory writ of mandate directing the superior court to grant petitioner's motion and to allow substitution of the bonds for the cash now on deposit. He relies on Penal Code section 1298. This section provides:

"In lieu of a deposit of money, the defendant or any other person may deposit bonds of the United States or of the State of California of the face value of the cash deposit required, and such bonds shall be treated in the same manner as a deposit of money or the defendant may give as security any equity in real property which he owns. A hearing, at which witnesses may be called or examined, must be held before the magistrate to determine the value of such equity and if the magistrate finds that the value of such equity is equal to twice the amount of the cash deposit required he shall allow such bail. The clerk shall, under order of the court, when occasion arises therefor, sell the said bonds or the equity and apply the proceeds of such sale in the manner that a deposit of cash may be required to be applied.

"The county treasurer shall, upon request of the judge, keep such deposit and return it to the clerk on order of the judge."

No contention is made by petitioner that the amount of bail set by the superior court is excessive or otherwise unreasonable.

Section 1298 has been in effect for over 50 years, and it has been generally recognized that government bonds may be and have been used "in lieu of a deposit of money." (See Gustafson, *Bail in California* (1956) 44 Cal.L.Rev. 815, 826; and *The Work of the 1937 California Legislature* (1937) 11 So.Cal.L.Rev. 1, 75.) In *Wilson* v. *Justice's Court* (1937) 22 Cal.App.2d 278 [70 P.2d 695], the court upheld a judgment of the superior court which ordered the justice court to accept tendered bonds of the United States government at their face value for bail. It answered in the affirmative the following question, " 'Is it mandatory upon a Justice of the Peace to accept bonds of the United States in lieu of a deposit of money pursuant to sec. 1298 of the Penal Code in the absence of a showing that the present cash value of the bonds is equal to or exceeds the sum fixed as bail?' " (22 Cal.App.2d at p. 279.)

In *Wilson* no question was raised concerning the constitutionality of section 1298, nor was any contention made that the application of the statute to the bonds tendered in that case would be inconsistent with the general purpose of bail as recognized by the Legislature and the courts.

The Attorney General asserts that the *Wilson* case is not controlling and that unless the provisions of section 1298 are construed as being permissive, they are unconstitutional as an impermissible encroachment on powers reserved to the judiciary by the state Constitution; and that in any event the provisions of the section only apply to initial bail deposits, not to bail substitutions.

 It is concluded that the relief requested by petitioner must be denied. Section 1298 when viewed in the light of the Constitution and other statutes relating to bail permits the court to reject the tendered bonds when their actual or market value is not commensurate with the sum fixed by the court under the criteria prescribed by the Constitution and those other statutes. *Wilson* v. *Justice's Court, supra,* must be disregarded because it did not resolve the issue raised on this appeal.

## I

The California Constitution provides in part, "All persons shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident or the presumption great. Excessive bail shall not be required, . . ." (Art. I, § 6.)

In view of the current interest in bail reform,[1] one may hesitate to indicate that the judicial power over bail is plenary and not subject to control by the Legislature. ■ "Our courts are set up by the Constitution without any special limitations; hence the courts have and should maintain vigorously all the inherent and implied powers necessary to properly and effectively function as a separate department in the scheme of our state government. [Citations.] But this does not mean that the three departments of our government are not in many respects mutually dependent. Of necessity the judicial department as well as the executive must in most matters yield to the power of statutory enactments. [Citations.] ■ *The power of the legislature to regulate criminal and civil proceedings and appeals is undisputed.*" (Italics added; *Brydonjack* v. *State Bar* (1929) 208 Cal. 439, 442-443 [281 P. 1018, 66 A.L.R. 1507]; see also *People* v. *Sica* (1953) 116 Cal.App.2d 59, 61 [253 P.2d 75]; and cf. *People* v. *Tenorio* (1970) 3 Cal.3d 89, 95 [89 Cal.Rptr. 249, 473 P.2d 993].) The Legislature has purported to legislate with respect to bail through the provisions found in chapter I (§§ 1268-1320.5) of title 10 of part 2 of the Penal Code. It has been recognized that the Legislature may regulate the procedure by which an accused is released on his own recognizance (*In re Smiley, supra,* 66 Cal.2d 606, 613), may control the discretion of the courts to declare bail forfeitures (*People* v. *Durbin* (1966) 64 Cal.2d 474, 477-479 [50 Cal.Rptr. 657, 413 P.2d 433]), may restrict the court's power to relieve from bail forfeitures (*People* v. *National Auto. & Cas. Co.* (1966) 242 Cal.App.2d 150, 153-154 [51 Cal.Rptr. 212]; and *People* v. *Stuyvesant Ins. Co.* (1963) 216 Cal.App.2d 380, 381-383 [31 Cal.Rptr. 208]), and may provide that the right to bail after conviction and pending appeal is discretionary (*Ex Parte Voll* (1871) 41 Cal. 29, 31-33).

"With reference to general principles of constitutional law, judicial decisions abound with declarations to the effect that all presumptions and intendments favor the validity of statutes; that mere doubt by the judicial branch of the government as to the validity of a statute will not afford a sufficient reason for a judicial declaration of its invalidity, but that statutes must be upheld as constitutional unless their invalidity clearly, positively, and unmistakably appears." (*People* v. *Superior Court* (1937) 10 Cal.2d 288, 298 [73 P.2d 1221].)

---

[1] Reference to recent issues of the index to legal periodicals under the title "Bail" reveals the scope of this interest. See, e.g., Portman, *Preventative Detention* (1970) 10 Santa Clara Lawyer 224; Comment, *Pretrial Release* (1969) 57 California Law Review 1112; Comment, *Tinkering with the California Bail System* (1968) 56 California Law Review 1134; Bail and O.R. Release (1971) San Francisco Committee on Crime; and *In re Smiley* (1967) 66 Cal.2d 606, 612-613, footnote 3 [58 Cal.Rptr. 579, 427 P.2d 179] and accompanying text. For a summary of the background of the development of the right to bail, see Foote, *Crisis in Bail* (1965) 113 University of Pennsylvania Law Review 959 and 1125, at pp. 965-989.

■ Moreover, when a statute is reasonably susceptible of two constructions, that construction which will uphold the statute is to be preferred to a construction of doubtful validity. (See *Palermo* v. *Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 59-61 [195 P.2d 1]; and *Sawyer* v. *Barbour* (1956) 142 Cal.App.2d 827, 833 [300 P.2d 187]; but cf. *City of Los Angeles* v. *Offner* (1961) 55 Cal.2d 103, 112-113 [10 Cal.Rptr. 470, 358 P.2d 926].) *Palermo* also recognizes the proposition that the courts should not unnecessarily pronounce upon the constitutionality of any duly enacted statute. (32 Cal.2d at pp. 65-66; see also *People* v. *Gilbert* (1969) 1 Cal.3d 475, 481-484 [82 Cal.Rptr. 724, 462 P.2d 580].)

## II

■ With the foregoing precepts in mind attention may be directed to the People's contention that the section be construed as giving the court discretion to accept bonds at their face value in lieu of a deposit of money. *In re Brumback* (1956) 46 Cal.2d 810 [299 P.2d 217] states ". . . the primary purpose of bail, before or after conviction; is practical assurance that defendant will attend upon the court when his presence is required." (46 Cal.2d at p. 813; see also *In re Newbern* (1961) 55 Cal.2d 500, 504 [11 Cal.Rptr. 547, 360 P.2d 43]; *Williams* v. *Superior Court* (1964) 226 Cal.App.2d 666, 673 [38 Cal.Rptr. 291]; *Sawyer* v. *Barbour, supra,* 142 Cal.App.2d 827, 833-834; and *People* v. *Semecal* (1968) 264 Cal.App.2d Supp. 985, 992 [69 Cal.Rptr. 761].) In the case last cited, the opinion observes, ". . . the broad definition of bail implies its purpose to be that of a tool to assure the ability of society to protect itself by lawfully conducted criminal prosecution. In that light its purpose cannot be narrowly construed as a mere guarantee of defendant's presence at the time for punishment, but rather it must be intended to ensure the orderly administration of justice." (264 Cal.App.2d Supp. at p. 992.)

The Legislature has recognized the foregoing principles. Section 1275 provides in part, "In fixing the amount of bail, the judge or magistrate shall take into consideration the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his appearing at the trial or hearing of the case. . . ." (See *In re Newbern, supra,* 55 Cal.2d 500, 504.)

The statutes providing for bail make express provision for the deposit of bail in two methods, i.e., either by the deposit of a bail bond (§§ 1269, 1269a, 1278, 1279, 1280, 1281, 1287, 1292) or by the deposit of cash (§ 1298). Where the bail is in the form of a bail bond the undertaking must be accepted by the court and it must consist of sufficient bail for the appearance of the defendant, according to the terms of the undertaking, or that the surety will pay to the people of this state the sum specified by

the court (§ 1269). Where bail is in the form of deposit by cash the court fixes the amount in the order admitting him to bail (§ 1295).

It appears, therefore, that on the one hand the judge is directed to fix a sum according to the foregoing criteria, and yet, as applicable to this case, by the rigid interpretation of the provisions of section 1298 as found in *Wilson* v. *Justice's Court, supra,* he is ordered to receive property of a value of only 52 percent of the sum fixed in satisfaction of what was considered reasonable. The juxtaposition of the two sections as so construed is not only inconsistent of itself, but is also inconsistent with other sections which place restraints on the arbitrary reduction of bail. (See §§ 1269c, 1289, and 1320.5.)

In the instant case the court made its order admitting defendant to bail by fixing the cash amount thereof in the sum of $50,000. The propriety of that determination was not challenged by petitioner and he deposited that amount with the clerk whereupon he was discharged from custody. No application has been made by petitioner for a reduction of the amount of such cash bail. (See § 1289.) Instead petitioner has sought to substitute bonds of the State of California in the face value of $50,000 in lieu of cash bail in the sum of $50,000 previously deposited by him. These bonds have a market value of approximately $26,000.

The deposit of bonds of a market value less than the amount of the cash deposit required has the effect of reducing the amount of the bail which the court had deemed adequate and sufficient for the purposes of bail. If the court is automatically required to accept the subject bonds the effect is to reduce the amount of bail from $50,000 to $26,000 without the necessity of any showing as required by section 1289 providing for the increase or reduction of bail upon good cause shown. If we are to assume that a reduction does not result by the substitution, then we have the incongruous situation where the court is in effect saying that $50,000 in cash is necessary to ensure petitioner's presence when he makes a cash deposit but only $26,000 is adequate when he deposits bonds in lieu of the cash deposit.

The inconsistency between the provisions of section 1298 as construed in *Wilson* v. *Justice's Court, supra,* and the other provisions relating to bail, may be reconciled if the criteria set forth in section 1275 are interpolated into section 1298 so that the court has discretion to reject the proffered bonds when the value of the bonds is not deemed sufficient to satisfy the amount deemed proper under the criteria found in section 1275. This construction is consistent with the further provisions of section 1298 which require a finding that any equity in real property received in lieu of a deposit of money shall be of a value "equal to twice the amount of the cash deposit required," and which provide that "such bonds shall be treated

in the same manner as a deposit of money" and the language that "The clerk shall, under order of the court, . . . sell the said bonds . . . and apply the proceeds of such sale in the manner that a deposit of cash may be required to be applied." The latter sentence dispels any notion that where there is a forfeiture the court is required to wait until the face value equals the market or actual value. Such equality may not be attained until the maturity date. Rather, it indicates that where there is a forfeiture the bonds must be promptly sold. It is, of course, impossible to apply bond proceeds of $26,000 to the satisfaction of a required cash deposit of $50,000.

Precedent for this construction is found in *In re Chadbourne* (1911) 15 Cal.App. 363 [114 P. 1012], where the court stated, "We must assume that the legislature had before it this policy of the law when it enacted the statute in controversy. And while the language upon its face seems to be mandatory, the cardinal canon of interpretation requires, of course, that we give effect to the intention of the lawmakers, though it may seem opposed to the letter of the statute. This is well expressed by Judge Thayer in *Chauncey* v. *Dyke Bros.*, 119 Fed. 9 [55 C.C.A. 587], as follows: 'We are aware that some courts have at times expressed, in strong terms, the necessity of pleading and enforcing statutes literally without regard to consequences. Some of these utterances have been called to our attention. But this doctrine of literalism which clings to the letter of a statute and ignores its purpose is not well calculated to promote the ends of justice. It is not the duty of a court of justice to perpetuate mistakes inadvertently made by the lawmaker by a blind adherence to the letter of the law, when the *purpose* of the law is apparent. Legislative bodies are not always fortunate in the use of language, but if careful attention is paid to all the provisions of a statute as well as to the conditions which led to its enactment, little difficulty will generally be experienced in ascertaining what was intended. When the purpose is disclosed it should be given effect, since whatever is within the intention of the lawmaker is as much within the statute as if it was within the letter.'

"In accordance with this primary rule of interpretation courts have construed 'may' as mandatory, giving it the meaning of 'shall' or 'must' [citations]; and in many cases it is held that *shall* and *must* are directory merely. [Citations.]" (15 Cal.App. at pp. 368-369; see also *Estate of Mitchell* (1942) 20 Cal.2d 48, 51 [123 P.2d 503]; *Pappadatos* v. *Superior Court* (1930) 209 Cal. 334, 335 [287 P. 342]; and *Giacalone* v. *Industrial Acc. Com.* (1953) 120 Cal.App.2d 727, 733-736 [262 P.2d 79] [overruled on other grounds, *Scott* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 76, 87 (293 P.2d 18)].)

. Under petitioner's contention it is conceivable that bonds having a market value which is a fraction of the cash bail required could be deposited with impunity. Thus, a defendant, who is not likely to abscond if he is required to deposit $50,000 in cash, might deem it expedient to abscond where he is subject to lose only the sum of $26,000 which he has paid for bonds having a face value of $50,000.

Section 1298 may be construed as providing that bonds of the face value of the cash deposit required may be deposited and "may" be treated in the same manner as a deposit of money, when their actual value is such that it will satisfy the criteria set forth in section 1275, or in other words is commensurate with a proper amount of cash bail.

It is recognized that the Legislature may also have had an intent to increase the merchantability of bonds issued by the state by increasing their utility. (Cf. 26 U.S.C.A. [Int. Rev. Code] § 6312, and Federal Tax Regulation (1971) §§ 301.6302-2, 301.6312-2, which provide for payment of internal revenue taxes with certain obligations of the federal government at their par value.) In this case, that intent must be deemed subordinate to the general intent of the bail statutes to insure "the probability of [the defendant's] appearing at the trial or hearing of the case." (§ 1275.)

For the foregoing reasons, which were not discussed in *Wilson* v. *Justice's Court, supra,* that case should be disapproved and not considered controlling.

The application for a peremptory writ of mandate is denied; the alternative writ is discharged.

Molinari, P. J., concurred.

**ELKINGTON, J.**—I concur, but in the result only.

The pertinent language of Penal Code section 1298 states: "In lieu of a deposit of money, the defendant or any other person may deposit bonds of the United States or of the State of California of the face value of the cash deposit required, and such bonds shall be treated in the same manner as a deposit of money. . . ."

In the plainest of language courts are told by section 1298 that for purposes of bail they must accept federal and state bonds at their face value. In the context of this case the superior court was ordered by the statute to accept such bonds, actually worth $26,000, at their face value of $50,000. To find a different legislative intent, in my opinion, must strain reason.

Faced with the task of interpreting section 1298 the District Court of

Appeal in *Wilson* v. *Justice's Court*, 22 Cal.App.2d 278 [70 P.2d 695] (where no question of constitutionality was raised or resolved), found its meaning clear. There the justice's court clerk had refused a tender of federal bonds as bail because it was not established "that the present cash value of the bonds tendered equalled the sum of money fixed as bail." The court said (p. 280):

"The contention thus advanced is not impressive. The above-quoted statute [Pen. Code, § 1298] specifies that a defendant may, in lieu of money, deposit bonds of the United States 'of the face value' of the cash deposit required. The judgment from which this appeal is taken refers to the statute and recites that it is the opinion of the trial court that the phrase 'face value' means 'that value, written or printed on the face of said instruments and the unmatured coupons attached thereto, *without reference to the actual or market value of said bonds.*' It is our opinion that the definition of the phrase is correct. . . ." (Italics added.)

It does not seem reasonable that here, when the constitutionality of section 1298 is for the first time challenged, we should strain and strive for a different interpretation, i.e., that, despite its language, the statute really means that the court need *not* accept government bonds for bail purposes at their face value.

The California Constitution, article I, section 6, deals with the subject of bail. It provides that bail *shall be sufficient,* while at the same time assuring that it shall not be *excessive.*[1]

In the case before us the superior court in fixing bail at $50,000 cash found that amount not to be *excessive,* but nevertheless *sufficient.* No contention is made that the amount is unreasonable or erroneous in any way.

To the extent that section 1298 purports to compel the superior court to accept bail valued at $26,000 in compliance with an order determining $50,000 as necessary and *sufficient* for "practical assurance that defendant will attend upon the court," (*In re Newbern,* 55 Cal.2d 500, 504 [11 Cal.Rptr. 547, 360 P.2d 43]) the statute clearly contravenes the Constitution of this state.

"An act of the Legislature is not to be set aside upon any doubtful or uncertain construction to be given the Constitution. But where its infraction

---

[1]The full text of California Constitution, article I, section 6, follows: "All persons shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident or the presumption great. Excessive bail shall not be required, nor, excessive fines imposed; nor shall cruel or unusual punishments be inflicted. Witnesses shall not be unreasonably detained, nor confined in any room where criminals are actually imprisoned."

is clear and unmistakable, the duty of the court is plain, and should be fearlessly performed. . . ." (*Van Harlingen* v. *Doyle,* 134 Cal. 53, 56 [66 P. 44].) "It is the duty of courts to maintain supremacy of the Constitution. . . ." (*Byers* v. *Board of Supervisors,* 262 Cal.App.2d 148, 157 [68 Cal.Rptr. 549].)

For the reasons stated only, I would deny the petition for mandate.