[Civ. No. 29788. First Dist., Div. Four. May 8, 1972.]

THEODORE R. WILLIAMS et al., Plaintiffs and Respondents, v. CITY OF OAKLAND et al., Defendants and Appellants.

## COUNSEL

Edward A. Goggin, City Attorney, and Mark B. Shragge, Deputy City Attorney, for Defendants and Appellants.

Oliphant, Hopper & Stribling and Ralph E. Hopper for Plaintiffs and Respondents.

## OPINION

**RATTIGAN, J.**—This appeal is from a permanent injunction purporting to regulate some aspects of the procedure by which certain persons are released on bail after having been arrested on criminal charges.

The appeal has been taken on the judgment roll alone, which (as defined in Code Civ. Proc., § 670, subd. 2) consists of the complaint and answer, the trial court's findings of fact and conclusions of law, and the injunction; there is no evidentiary record. (See fn. 1 and accompanying text, *post*.) As the underlying facts and the effect of the injunction are not ade-

quately disclosed by the judgment-roll documents or in the briefs, we are required to reconstruct them from an interpretation of the limited record. It shows as follows:

Plaintiffs are Theodore R. Williams and Lelma L. Williams. The named defendants are the City of Oakland, its police department, and its police chief. Plaintiffs alleged in their complaint, among other things, (1) that they operate a bail bond agency in Oakland; (2) that "[d]efendants, and each of them," had refused "to accept United States Treasury Bonds in lieu of surety bond or cash as and for bail for various defendants," and (3) that "said acts are directly in conflict with Section 1298 of the Penal Code . . . and defendants have thereby violated Plaintiffs' legal right pursuant to said Section to post United States Treasury Bonds in lieu of cash or surety bonds." In the prayer, plaintiffs sought a permanent injunction requiring defendants to desist in the refusal practice mentioned.

Defendants having filed an answer setting forth various denials, the cause came on for hearing.[1] The trial court thereafter made findings of fact and conclusions of law generally favorable to plaintiffs,[2] and entered a "Permanent Injunction" substantially as prayed.[3] Defendants appeal.

[1]According to prefatory statements in the trial court's findings and conclusions, and in the injunction (the operative language of each of which is quoted in fns. 2 and 3, *post*), the cause was submitted on its merits, by stipulation, after argument by counsel. This fairly indicates that the trial court received no evidence. As no written stipulation appears in the judgment roll, the record on appeal contains no evidence at all.

[2]The findings and conclusions read in pertinent part as follows:
"The court now makes the following findings of fact and conclusions of law:
"[FINDINGS OF FACT] 1. The plaintiffs are . . . duly licensed . . . bail agents with their principal place of business in the City of Oakland, County of Alameda, State of California. 2. The City of Oakland is a municipal corporation . . . [Defendant] . . . Gain is Chief of Police of the Oakland Police Department. The Oakland Police Department is a part of the City of Oakland, a municipal corporation.
"CONCLUSIONS OF LAW[.] From the foregoing Findings of Fact, the court makes the following Conclusions of Law: 1. That section 1298 of the Penal Code includes within its mandate the officer in charge of the jail wherein an arrested person is held in custody. 2. That plaintiffs are entitled to a permanent injunction enjoining the defendants from refusing to accept United States Treasury Bonds in lieu of cash or surety bonds for the purpose of posting bail."

[3]The operative language of the injunction reads:
"IT IS ORDERED that the defendants and each of them, and their agents, servants, employees, and representatives, and all persons acting in concert or participating with them, shall be and are hereby enjoined and restrained from engaging in or performing, directly or indirectly, any and all of the following acts, to wit: Refusing to accept United States Treasury Bonds in lieu of cash or surety bonds for the purpose of bail as set forth in Penal Code section 1298. It is specifically ordered that plaintiffs have the right to post United States Treasury Bonds in lieu of cash or surety bonds and that they are to be accepted by the officer in charge of the Oakland City Jail as to arrested persons held in custody therein."

As pertinent here, the statutory provisions on the subject of bail are found in the various articles (1 through 9, inclusive) of chapter 1 of title 10 of part 2 of the Penal Code (commencing with § 1268 thereof).[4] The parties reached by the injunction include "the defendants." (See fn. 3, *ante.*) The named defendants are a city, its police department, and its police chief, none of whom, as such, has any authority or duty under the bail chapter.

In addition to the "defendants," however, the injunction reaches their "agents, servants, employees, and representatives" and, more specifically, "the officer in charge of the Oakland City Jail." (See fn. 3, *ante.*) The bail chapter refers to the last-mentioned official, and vests him with certain authority relative to bail, in section 1296b. (Quoted in fn. 9, *post.*) It fairly appears, thus (from an analysis of the record in light of that section, and although the record itself is silent or unclear on the points next mentioned), that the "officer in charge of the Oakland City Jail" is an Oakland police officer; that the action and the injunction are in reality addressed to the named defendants only insofar as they act or refuse to act through him as one of their "agents, servants, employees, and representatives"; that, for practical purposes, it is he whom the injunction requires to accept "United States Treasury Bonds in lieu of cash or surety bonds for the purpose of bail as set forth in Penal Code section 1298 . . . as to arrested persons held in custody" in the Oakland City jail (see fn. 3, *ante*); and that we are dealing with the limited—but commonplace—extra-judicial situation which permits the release of an arrested person on bail prior to his first court appearance, and wherein section 1269b authorizes a city jailer (hereinafter "jailer")[5] to effect such release subject to certain conditions and limitations. (See § 1269b as quoted in fn. 9, *post.* See also Gustafson, *Bail In California* (1956) 44 Cal.L.Rev. 815, 827-828.)

The foregoing reconstruction of the record defines the broad question on appeal as to whether the jailer may be compelled to accept United States bonds as bail, pursuant to section 1298 and "in lieu of cash or surety bonds" (see fn. 3, *ante*), and in the exercise of the authority vested in him by section 1269b. Having analyzed these two statutes historically (as set forth *infra*), we must answer the question in the negative; this requires the reversal hereinafter ordered.

Section 1298 provides that, "[i]n lieu of a deposit of money, the de-

---

[4]We hereinafter refer to chapter 1, thus cited, as the "bail chapter." Where we designate a section without mentioning a specific code, the reference is to a Penal Code section appearing in the bail chapter.

[5]As hereinafter used, the term "jailer" applies to a city jailer or to his local-government equivalent as designated in section 1269b (quoted in fn. 9, *post*).

fendant or any other person" may deposit certain government bonds (which include the United States Treasury bonds involved here) as bail, and that, for the same purpose, "the defendant may give as security any equity in real property which he owns"; it extends the stated privileges to the persons it names ("the defendant or any other person," or "the defendant," respectively), but does not expressly refer to the duty or authority of a jailer to accept such bonds for the purpose of bail.[6]

The authority of a jailer to accept bail in any form, as presently expressed in section 1269b (see fn. 9, *post*), has been developed by the Legislature in the sequence next set forth. Such authority was first created, in 1951, by the enactment of former section 737.1 of the Vehicle Code. That statute applied only where a person had been arrested for a "misdemeanor violation" of the Vehicle Code and had been taken to a jail because no magistrate was available. It required the jailer to "admit him to bail" upon the deposit of cash or of a surety bond, in an amount predetermined by a bail schedule fixed and circulated by the magistrates of the county involved, and to release the arrestee when this had been done.[7] Similar, but more limited, authority was vested in a jailer, as to persons arrested and booked on misdemeanor charges not involving Vehicle Code violations, by amendment of section 1295 of the Penal Code in 1955. As then amended, sec-

---

[6]Section 1298 presently provides as follows:

"1298. In lieu of a deposit of money, the defendant or any other person may deposit bonds of the United States or of the State of California of the face value of the cash deposit required, and such bonds shall be treated in the same manner as a deposit of money or the defendant may give as security any equity in real property which he owns. A hearing, at which witnesses may be called or examined, must be held before the magistrate to determine the value of such equity and if the magistrate finds that the value of such equity is equal to twice the amount of the cash deposit required he shall allow such bail. The clerk shall, under order of the court, when occasion arises therefor, sell the said bonds or the equity and apply the proceeds of such sale in the manner that a deposit of cash may be required to be applied.

"The county treasurer shall, upon request of the judge, keep such deposit and return it to the clerk on order of the judge."

As originally enacted, section 1298 permitted the deposit of government bonds only, and contained the substance of the present third sentence relative to their sale when necessary and when ordered by the court. (Stats. 1919, ch. 159, § 1, p. 240.)

Section 1298 was amended in 1931 to add the provisions of its present first sentence permitting "the defendant [to] give as security any equity in real property which he owns," and those of its present second sentence requiring a judicial ascertainment of the equity's value before it is acceptable as bail. (Stats. 1931, ch. 1172 (p. 2481), § 2, p. 2482.)

In 1937, section 1298 was again amended to read in its present form and to include its present fourth sentence. (Stats. 1937, ch. 509 (p. 1498), § 3, pp. 1498-1499.)

A subsequent amendment (Stats. 1951, ch. 1608 (p. 3609), § 18, pp. 3616-3617) is not relevant here.

[7]See Statutes 1951, chapter 444, section 1, page 1457 (adding the section to the Vehicle Code as § 737.2); Statutes 1951, chapter 802 (p. 2289), sections 3 and 6, pages 2290-2291 (adding and amending it, and renumbering it as § 737.1 of the Veh. Code).

tion 1295 authorized a jailer to accept bail for such person in cash only, in an amount fixed (1) by a bail schedule adopted by the judges of the court with jurisdiction of the offense or (2) in the warrant of arrest (if the amount it mentioned did not exceed $1,000), and to release the person from custody.[8]

In a single enactment at its 1957 Regular Session, the Legislature changed the jailer's authority in several respects. It eliminated the separate procedure, applicable to persons arrested for misdemeanor violations of the Vehicle Code, by amending section 737.1 thereof to provide that he (the jailer) was to admit such persons to bail "in accordance with a schedule, fixed as provided in section 1269b of the Penal Code"; deleted the reference to his authority in this respect as formerly stated in section 1295 (of the Pen. Code); and removed the definition of such authority to a substantially rewritten version of section 1269b thereof, where it has appeared since.[9]

Having originally been enacted in 1919 (see its history as detailed in fn. 6, *ante*), section 1298 appeared in the Penal Code at all times during the progressive development (commencing in 1951) of a jailer's statutory authority to accept bail as now defined in section 1269b. (See text at fns. 7, 8, and 9, *ante*.) The precise question on appeal, therefore, is whether the Legislature intended to authorize a jailer to accept "bonds of the United States or of the State of California" if offered by "the defendant or any

---

[8]See section 1295 as amended by Statutes 1955, chapter 1348 (p. 2427), section 3, pages 2428-2429. (As to the conjunction of § 1295 and former Veh. Code, § 737.1, see 22 Ops.Cal.Atty.Gen. 230, 230-232 (1953); 32 Ops.Cal.Atty.Gen. 84, 85 (1958); Gustafson, *op. cit. supra*, 44 Cal.L.Rev. 815 at pp. 827-828.)

[9]See Statutes 1957, chapter 2324 (p. 4049), sections 4 (p. 4051), 8 (p. 4052), and 1 (pp. 4049-4050), respectively. After subsequent amendments thereto in respects not relevant here, section 1269b now provides in pertinent part as follows:

"1269b. The . . . [jailer] . . . shall have authority to approve and accept bail in such amount as fixed by the warrant of arrest or schedule of bail or order admitting to bail in cash or surety bond executed by a certified, admitted surety insurer as provided in the Insurance Code, to issue and sign an order for the release of the arrested person, and to set a time and place for . . . [his] appearance . . . before the appropriate court and give notice thereof, as follows:

". . . [Subdivisions (a) and (b) of the section, which successively follow in its text, establish the source—arrest warrant, bail schedule or court order—from which the jailer is to determine the amount of bail required in a particular case, depending upon whether the offense involved is a misdemeanor (subd. [a]) or a felony (subd. [b]) and upon variable circumstances in either case. Subdivision (c), which follows next in order, relates to the compilation, revision and circulation of a 'schedule of bail' by the 'municipal and justice court judges in the county.'] . . .

"Upon posting such bail the defendant or arrested person shall be discharged from custody . . . .

"All money and surety bonds so deposited with such officer [i.e., with the jailer] shall be transmitted immediately to the judge or clerk of the court by which the order was made or warrant issued or bail schedule fixed."

other person," as bail, pursuant to section 1298. (See fn. 6, *ante.*) We answer this question in the negative for the following reasons:

Although section 1269b and its predecessor statutes (former Veh. Code, § 737.1 and former Pen. Code, § 1295; see text at fns. 7, 8, and 9, *ante*) have been specific at all such times, as to what a jailer was authorized to accept as bail (i.e., "cash or surety bond," as § 1269b presently provides), none has expressly permitted him to accept government bonds for that purpose and none has referred to section 1298 as such. (See the various enactments listed in fns. 7, 8, and 9, *ante.*) The Legislature has authorized the clerk of a municipal court with jurisdiction, in some off-hour situations (and still subject to a judicially predetermined bail schedule), to accept "negotiable United States Treasury bonds" as bail in lieu of cash "or a surety bond" (Gov. Code, §§ 72301-72302. Gustafson, *op. cit. supra*, 44 Cal.L.Rev. 815 at p. 828) but—so far as we have been able to ascertain— no such explicit authority has been granted to a jailer.

Section 1269b requires a jailer to transmit "money and surety bonds" to the appropriate judge or court clerk "immediately" after he has accepted them as bail. (See fn. 9 [last paragraph], *ante*), but neither it nor its predecessor statutes have required that he so "transmit" government bonds as defined in section 1298. (See the various enactments listed in fns. 7, 8, and 9, *ante.*) Moreover, they have exacted no more of a jailer than the task of ascertaining a judicially predetermined bail figure in a given case and counting cash or examining a corporate surety bond accordingly; they have not permitted him any significant degree of judgment beyond this. While cash or a corporate surety bond may quickly and accurately be examined in his determination whether either is acceptable as bail, this is not true of "bonds of the United States or of the State of California" (§ 1298); it is common knowledge—and we may judicially notice the facts if necessary—that such government bonds are issued in many variable forms, and that some are immediately negotiable as bearer bonds and others are not. Given the narrow limits of a jailer's authority as defined in section 1269b, it appears to us that the Legislature has not intended to impose upon him the responsibility of identifying and accepting such bonds as bail pursuant to section 1298.

The factor last mentioned (i.e., the problems involved in examining government bonds for their acceptability as bail) prompts us to mention *Newton* v. *Superior Court* (1971) 16 Cal.App.3d 499 [94 Cal.Rptr. 120]. Although respondents rely exclusively upon *Newton* in their brief, we conclude that the decision is not controlling here because it does not reach or refer to the authority of a jailer to accept government bonds as bail pur-

suant to section 1298. It does hold, however, that, despite the express reference in section 1298 to the "face value" of government bonds offered as bail (see fn. 6, *ante*), such bonds are acceptable as bail in a given case only if their *"actual* value . . . is commensurate with a proper amount of cash bail." (*Newton* v. *Superior Court, supra,* at p. 507 [italics added].) This necessarily requires, in the case of unmatured bonds at least, a judicial evaluation of government bonds before they are acceptable as bail. A jailer cannot reasonably be expected to conduct such evaluation. Therefore, and although *Newton* is not controlling here for the reason mentioned above, it provides a further rationale for our decision. Specifically, we hold that a jailer is not required to accept as bail "bonds of the United States or of the State of California" as provided in section 1298. It follows that the injunction before us must be reversed because it directs the defendants to the contrary.

The "permanent injunction" entered herein on March 23, 1971, is reversed. The cause is remanded to the trial court with directions to deny the injunction prayed.

Devine, P. J., and Bray, J.,* concurred.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.